# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A16-0698

In re the Matter of: Birch Benjamin Hansen, petitioner,
Appellant,

vs.

Suzanne Christine Todnem,
Respondent.

**Filed February 13, 2017**
**Affirmed**
**Hooten, Judge**

Ramsey County District Court
File No. 62-FA-14-371

Thomas B. James, Law Office of Thomas B. James, Cokato, Minnesota (for appellant)

Suzanne Christine Todnem, St. Paul, Minnesota (pro se respondent)

Considered and decided by Peterson, Presiding Judge; Hooten, Judge; and Smith, John, Judge.[*]

## S Y L L A B U S

I.      When parents have a monthly combined parental income for child support (PICS) over $15,000, Minnesota Statutes section 518A.35, subdivision 1(e) (2016), does not require that the combined PICS be capped at $15,000 in order to calculate the presumed basic child support obligation.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

II.    While a district court may modify a parenting time arrangement if the modification is in the best interests of the child, the district court need not make explicit findings on all the best interests factors listed in Minnesota Statutes section 518.17, subdivision 1(a) (2016), if the proposed modification is insubstantial or a mere clarification.

III.    For purposes of calculating a parent's medical support obligation, the district court does not abuse its discretion by evaluating a medical insurance policy's deductibles and co-payments, in addition to monthly premium costs, when considering the policy's affordability.

IV.    The federal tax code does not prohibit the district court from allocating the federal dependency exemption to an unmarried parent who is not able to claim head of household status that taxable year.

**O P I N I O N**

**HOOTEN**, Judge

In this dispute regarding child support, child care, and child-related tax benefits, appellant father argues that the district court (1) erred by failing to apply a $15,000 statutory cap to the parents' monthly combined PICS; (2) abused its discretion by denying appellant's request to provide in-home, before and after school child care; (3) erroneously determined that the child would be covered under respondent mother's medical insurance policy; and (4) exceeded its authority in allocating the federal dependency exemption to the parent who is not entitled to claim head of household status.  We affirm.

2

# FACTS

Appellant Birch Benjamin Hansen and respondent Suzanne Christine Todnem are the parents of K.T. (the child), born in 2010. The parents, who never married, separated when the child was less than two months old, resulting in Todnem becoming the child's primary caretaker. Initially, Hansen voluntarily paid Todnem $1,000 per month in basic child support, two-thirds of the child care costs, and $99.91 per month for the child's medical insurance coverage. In January 2014, Hansen petitioned for a determination of custody, parenting time, and child support. The district court issued an order awarding Todnem temporary sole legal and temporary sole physical custody and directing Hansen to continue paying the same child support obligations that he previously volunteered.

In March 2015, a custody evaluation report recommended that the district court award the parties joint legal and joint physical custody along with equal parenting time, and that the district court appoint a parenting consultant. Approximately four months later, the parties finalized a comprehensive parenting plan that mirrored the custody evaluator's recommendations and met the elements outlined in Minn. Stat. § 518.1705, subd. 2(a) (2016). The district court adopted the parenting plan, which also allowed for a parenting consultant to determine the child's elementary school for the 2015 academic year. The parenting consultant chose a school located less than one-half mile from Hansen's residence.

Within weeks of the district court's adoption of the parenting plan, disputes arose between the parties regarding child support, child care, and child-related tax benefits. The district court issued an order in October 2015, determining that the parties' combined PICS

was $16,868[1] and concluding that there was no statutory cap for the PICS. Based on these determinations, the district court required Hansen to pay $424 per month in basic child support. The district court also denied Hansen's before and after school daycare request, finding that his request was not in the child's best interests. The district court found that although Hansen's monthly medical insurance costs were less than Todnem's monthly costs, Todnem's policy was preferable because her deductible was $150 while his deductible was $3,000.[2] The district court therefore ordered Hansen to pay $83 per month for medical support.

The district court initially allocated to each parent the right to claim all child-related tax exemptions, credits, and deductions in alternating years. But, because both parties moved to amend the district court's order, the district court amended its order to reverse the issue for resolution at an evidentiary hearing. At the hearing, Hansen claimed that he was entitled to claim the child exclusively for all tax-related benefits (dependency exemption, head of household status, child tax credit, and child and dependent care credit) because the child spends an equal amount of time with both parents and Hansen has a higher adjusted gross income than Todnem. The district court disagreed with Hansen and decided that the tax benefits should be allocated between Hansen and Todnem each year. In an effort to ensure that both parents would receive some tax benefit each year, the district

---

[1] The district court later recalculated the combined PICS to be $16,624.
[2] The district court noted that because of employer and employee contributions, Hansen's deductible may be reduced to $1,450.

4

court ordered that the parent who did not qualify for the head of household status for a given year be entitled to claim the dependency exemption. Hansen appeals.

## ISSUES

I.      Did the district court err by failing to apply a $15,000 statutory cap to the parties' combined PICS in its child support calculation?

II.     Did the district court abuse its discretion by denying Hansen's request to provide in-home child care during before and after school hours?

III.    Did the district court err in determining that Todnem, rather than Hansen, maintain the child under her medical insurance policy?

IV.     Did the district court err in allocating the dependency exemption to the parent who was not entitled to claim head of household status for that particular year?

## ANALYSIS

### I.

Hansen argues that the district court miscalculated his basic child support obligation by failing to limit the parents' combined PICS to $15,000. Generally, the district court has broad discretion in determining a parent's child support obligation. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984). But, the district court abuses its discretion if the support obligation goes against the facts in the record or if the district court misapplies the law. *Id.*

In computing a parent's child support obligation, the district court combines the parents' gross monthly income to arrive at the PICS and determines each parent's percentage contribution to the combined PICS. Minn. Stat. § 518A.34 (2016). Here, the district court calculated the parents' combined PICS as $16,624 and determined that Hansen's income made up 65% of the PICS. The district court did not apply a $15,000 cap to the parents' combined PICS, explicitly finding that "there is no cap on the combined

5

parental income under the [c]hild [s]upport [g]uidelines." The district court then limited the basic support obligation to the $1,883 statutory cap, pursuant to the child support guidelines, and adjusted Hansen's obligation to account for his equal parenting time. *See* Minn. Stat. §§ 518A.35, subd. 2, .36 (2016). As a result, Hansen's basic child support obligation was set at $424 per month.

Hansen specifically argues that the district court should have limited the parties' combined PICS to $15,000, and in doing so, reduced Hansen's gross monthly income from $10,728 to $9,104. Minn. Stat. § 518A.35, subd. 1(e), states:

> For combined [PICS] exceeding $15,000 per month, the presumed basic child support obligations shall be as for parents with combined [PICS] of $15,000 per month. A basic child support obligation in excess of this level may be demonstrated for those reasons set forth in section 518A.43.

If a statute's language is clear, this court will interpret the language and discern the legislature's intent according to the plain and the common sense meaning of the words. *State ex rel. Gardner v. Holm*, 241 Minn. 125, 129, 62 N.W.2d 52, 55 (1954). The plain meaning of section 518A.35, subdivision 1(e), is that if the parents' combined PICS is over $15,000, the presumed basic child support obligation, not the parents' combined PICS, is capped. In this case, the combined basic child support obligation is capped at $1,883, the presumed guideline amount for one child when the parents' combined PICS is $15,000 or over. Minn. Stat. § 518A.35, subd. 2.

Hansen's interpretation of the statute would lead to an unfair and absurd result because there is no reasonable explanation for why any combined income in excess of $15,000 should only reduce the amount of his income that is calculated into the combined

6

PICS and thereby reduce his PICS percentage to the detriment of Todnem. *See* Minn. Stat. § 645.17(1) (2016) ("[T]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable."). Despite Hansen's assertion to the contrary, there is a logical reason to use a combined PICS over $15,000 as it allows the district court to accurately calculate the percentage that each parent contributes to the PICS. Under these circumstances, the district court properly applied the statute and did not abuse its discretion in determining that the parents' combined PICS was $16,624 with a combined basic child support obligation of $1,883. Hansen's child support, which was calculated on this combined basic child support obligation, is in accordance with the child support guidelines.

**II.**

Hansen next claims that the district court abused its discretion by denying his request to provide in-home child care during before and after school hours. Because the district court considered, and Hansen argues on appeal, that this is an issue regarding the parties' parenting time, we analyze the issue through the lens of a typical parenting time modification. The district court has broad discretion in resolving parenting time questions based on the child's best interests, and we will not reverse its decision absent an abuse of discretion. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995).

After several months of difficult negotiations, the parties executed a parenting plan in which they agreed to joint legal and joint physical custody and equal parenting time with the child on a regular parenting time schedule. The parties also authorized a parenting consultant to select the child's elementary school. The parenting consultant selected a school located less than one-half mile from Hansen's residence. Hansen argued that he

7

could provide care for the child before and after school during what would be Todnem's scheduled parenting time. Hansen asserted that his request would benefit the child because he can work remotely from home and this arrangement could therefore give him additional parent-child contact and would decrease the parents' child care expenses.[3] Todnem opposed Hansen's request, preferring that the parties utilize the school's daycare program during her parenting time.

The district court framed Hansen's request as an alteration of the parenting time schedule and noted that he made his request only one month after agreeing to the parenting plan. The district court determined that Hansen did not offer any compelling reason why parenting time should be modified and failed to show that his proposal was in the child's best interests. The district court provided reasons why Hansen's request was not in the child's best interests, including: (1) the arrangement would continue the conflict between the parents regarding parenting time after they had spent much time and effort to agree to a parenting plan; (2) it would increase the amount of interaction between the parents and thus heighten the risk of additional conflict; and (3) Hansen's inconsistent availability to

---

[3] In his motion, Hansen cited Minn. Stat. § 518.175, subd. 8 (2016), which explains, "The court may allow additional parenting time to a parent to provide child care while the other parent is working if this arrangement is reasonable and in the best interests of the child, as defined in section 518.17, subd. 1," and includes three additional factors that the district court "shall" consider. While the statute provides a number of considerations other than the best interests factors that a district court must evaluate in making this determination, Hansen's argument focuses primarily on the sufficiency of the district court's findings regarding the best interests factors listed in Minn. Stat. § 518.17, subd. 1(a). For the reasons stated below, we conclude that the district court did not abuse its discretion in making its findings.

provide care would force the parents to make alternate arrangements that would disrupt the child's stability and schedule.[4]

## A. Best Interests Factors

Hansen claims that the district court erred by failing to evaluate his motion for additional parenting time under the best interests factors set forth in Minn. Stat. § 518.17, subd. 1(a). It is well-established that a court's analysis of parenting time disputes focuses on what is in the best interests of the child. *Clark v. Clark*, 346 N.W.2d 383, 385 (Minn. App. 1984), *review denied* (Minn. June 12, 1984). Generally, modification of a parenting plan or parenting time order is governed by Minn. Stat. § 518.175, subd. 5 (2016), which provides that a modification decision must "serve the best interests of the child," but does not explicitly require a district court to make particularized findings on all the best interests factors enumerated in Minn. Stat. § 518.17, subd. 1(a). Hansen's request to care for the child during before and after school hours during Todnem's scheduled parenting time has minimal effect, either in adding significant parenting time to Hansen or in decreasing the time that Todnem spends with the child on a regular basis. "Mere clarifications or insubstantial modifications of a [parenting time] schedule are within a [district] court's discretion and need not be supported by findings that such modification is in the children's best interests." *Funari v. Funari*, 388 N.W.2d 751, 753 (Minn. App. 1986).

---

[4] The district court provided the additional reason suggesting that institutional daycare may be preferable to in-home, parental care. To avoid speculating as to the quality of care that either the child's school or Hansen may provide, we will not consider this reason as part of our analysis.

Traditionally, Minnesota caselaw has treated requests for insignificant changes and clarifications to parenting time differently than substantial modifications. *See Anderson v. Archer*, 510 N.W.2d 1, 4 (Minn. App. 1993). A district court may decide minor parenting time changes and adjustments using its discretion and need not support its decision with specific findings, while significant changes "must be supported by findings that the modifications are in the best interest of the children." *Chapman v. Chapman*, 352 N.W.2d 437, 441 (Minn. App. 1984); *see also Funari*, 388 N.W.2d at 753. Generally, in order to make sufficient findings in matters concerning substantial parenting time modifications, the district court must hold an evidentiary hearing to determine whether a modification is in the child's best interests. *Matson v. Matson*, 638 N.W.2d 462, 468 (Minn. App. 2002); *cf. Braith v. Fischer*, 632 N.W.2d 716, 721 (Minn. App. 2001) (stating insubstantial modification does not require evidentiary hearing and is appropriate if modification serves child's best interests), *review denied* (Minn. Oct. 24, 2001).

In 2015, the legislature revised the best interests factors. 2015 Minn. Laws ch. 30, art. 1, § 3, at 271–72. Not only did the revised version of Minn. Stat. § 518.17, subd. (1)(a), alter the factors themselves, it also made explicit the applicability of the factors to matters regarding parenting time. The statute now provides that in resolving parenting time issues, the district court must consider all relevant factors, including the enumerated factors, make detailed findings on each factor, and explain how each factor ultimately led to its conclusion. Minn. Stat. § 518.17, subd. (1)(a)–(b) (2016). But the statute does not distinguish between the different types and degrees of parenting time issues. Minnesota courts have "long presumed that statutes are consistent with the common law, and if a

10

statute abrogates the common law, the abrogation must be by express wording or necessary implication." *Brekke v. THM Biomedical, Inc.*, 683 N.W.2d 771, 776 (Minn. 2004) (quotation omitted); *see Putz v. Putz,* 645 N.W.2d 343, 351 (Minn. 2002) ("[S]tatutes are not to be construed in derogation of well-established principles of the common law or equity unless such a construction is required by the express words of the statute or by necessary implication.").

We believe that the language of Minn. Stat. § 518.17, subd. 1(a)–(b), does not abrogate the principle, rooted deeply in our caselaw, that decisions regarding insubstantial modifications or clarifications of parenting time are within the district court's discretion and need not be supported by particularized findings on all of the statute's best interests factors. Therefore, under these circumstances in which a minimal change in parenting time is at issue and where the district court's decision was supported by a number of best interests findings, we conclude that the district court did not abuse its discretion simply because it did not make explicit best interests findings on all the enumerated factors listed in Minn. Stat. § 518.17, subd. 1(a).

## B. Sufficiency of the Findings

Hansen also asserts that the findings that the district court did make are not supported by the evidence. We disagree. "A district court's findings of fact underlying a parenting-time decision will be upheld unless they are clearly erroneous." *Newstrand v. Arend*, 869 N.W.2d 681, 691 (Minn. App. 2015) (quotation omitted), *review denied* (Minn. Dec. 15, 2015). "A finding is clearly erroneous if we are left with the definite and firm

11

conviction that the [district] court made a mistake." *SooHoo v. Johnson*, 731 N.W.2d 815, 825 (Minn. 2007).

Hansen first alleges that the district court unreasonably denied his request and improperly construed it as an "end run" around the parenting plan. Hansen notes that the parenting consultant did not select the school until after the parties had agreed to the parenting plan. However, the parents were well aware that child care would likely be needed, and the parents had used daycare programs in previous years.

While Hansen acknowledges that the district court was correct in its finding regarding his occasional inability to provide child care before school, he alleges that the district court erred in finding that his request would prevent the parties from establishing a stable routine for the child. But, the record supports the district court's concern that Hansen's availability to provide care before school would require the parties to make other arrangements that would likely disrupt the child's established routine and schedule. The record also supports the district court's finding that the parties had difficulty agreeing to a parenting plan. Therefore, it was reasonable for the district court to highlight that Hansen's request could increase the interaction and the potential for conflict between the parents. Under these circumstances, the district court did not clearly err in denying Hansen's request to provide child care during before and after school hours.

### III.

Hansen contends that the district court abused its discretion by determining that Todnem, rather than Hansen, was responsible for covering the child under her medical insurance policy, and thus requiring Hansen to pay a greater monthly amount in medical

support.  "Medical support" is defined as "providing health care coverage for a joint child by carrying health care coverage for the joint child or by contributing to the cost of health care coverage, public coverage, unreimbursed medical expenses, and uninsured medical expenses of the joint child."  Minn. Stat. § 518A.41, subd. 1(d) (2016).  As a child's medical support is part of child support, this court will not reverse a district court's decision regarding a parent's support obligation absent an abuse of discretion.  *Casper v. Casper*, 593 N.W.2d 709, 714 (Minn. App. 1999).

Because the parties agreed that their medical insurance policies provided comparable coverage, we must decide whether the district court properly exercised its discretion in finding Todnem's policy to be more affordable.  *See* Minn. Stat. § 518A.41, subd. 3(4) (2016) ("If both parents have health care coverage available for a joint child that is comparable with regard to comprehensiveness of medical benefits, accessibility, and the joint child's special needs, the least costly health care coverage is presumed to be the most appropriate health care coverage for the joint child.").  The district court found that Hansen's medical insurance for the child costs $64 per month while Todnem's costs $127 per month.  But, the district court also found that Hansen's deductible was $3,000, which could be reduced to $1,450 through employer and employee contributions, and that Todnem's deductible was only $150.  The district court noted that each plan's affordability would depend on the child's health needs each year.  For instance, the district court determined that if the child's medical expenses are high in a given year, the out-of-pocket expenses under Hansen's policy would be approximately $50 more per month than under

13

Todnem's plan. The district court therefore concluded that Todnem's plan was more appropriate and directed Hansen to pay $83 per month in medical support.

Hansen argues that the district court erred in concluding that Todnem's plan was less expensive, and thus more appropriate, because the district court found that Hansen's dependent health insurance costs per month were less than Todnem's. He contends that the district court's consideration of deductibles and co-pays for future medical expenses is speculative and cannot be considered part of health care coverage as it is defined in the statute.

The definition of health care coverage in the statute does not explicitly limit medical support costs to monthly premiums. *See id.*, subd. 1(a) (2016) ("'Health care coverage' means medical, dental, or other health care benefits that are provided by one or more health plans."). The statute provides that a health plan's affordability depends on whether its costs are reasonable. *Id.*, subd. 3(4) ("Dependent health care coverage is affordable it if is reasonable in cost."). The district court found that though the child does not have any chronic medical conditions, the child's health care needs are not limited to preventive care.[5] While the district court decided that both parents had comparable health care coverage, it determined that Todnem's policy, which had slightly higher premiums, was more reasonable in cost because it had a much lower deductible.

---

[5] The district court considered Todnem's submissions regarding the child's recent medical expenses and found that during a recent five-month period, health care providers had billed the parents for $1,118 in medical expenses.

14

Because it is a proper exercise of the district court's discretion to consider premiums, deductibles, and copayments in determining the affordability of a health care policy under section 518A.41, subdivision 3(4), we conclude that the district court did not abuse its discretion in determining that Todnem had the more affordable, and thus more appropriate, health care policy.

## IV.

Hansen argues that the district court exceeded its authority in deciding not to provide him, as the higher income earner and a parent with equal custody and parenting time, with the federal tax dependency exemption. For the reasons explained below, we disagree.

### A. Federal Statutory Requirements for Head of Household Status and the Federal Dependency Exemption

An individual who qualifies as a head of a household is entitled to a special tax rate under the Internal Revenue Code (the code). 26 U.S.C. § 1(b) (2012). The code also permits a taxpayer to claim an exemption for each of his or her dependents. 26 U.S.C. § 151 (2012). In addition to other criteria that are not relevant here, in order to claim the head of household status and the dependency exemption, the taxpayer must maintain a household that is a qualifying child's principal place of abode for more than one-half of the taxable year. *See* 26 U.S.C. §§ 2(b)(1) (2012), 151(a)–(c).

Federal law presumes that when parents are divorced or separated, the parent who has primary physical custody of a child is entitled to claim that child as his or her dependent. But, in a situation in which two or more taxpayers may claim the same qualifying child as a dependent, the code provides a tie-breaker rule. Under 26 U.S.C.

15

§ 152(c)(4)(B) (2012), if the parents claiming a qualifying child do not file a joint tax return, the child is treated as the qualifying child of "(i) the parent with whom the child resided for the longest period of time during the taxable year, or (ii) if the child resides with both parents for the same amount of time during such taxable year, the parent with the highest adjusted gross income."

**B.      The District Court's Application of the Order and Waiver Process**

In this case, the district court did not apply the tie-breaker rule and instead chose to use an order and waiver process, pursuant to 26 U.S.C. § 152(e) (2012), to allocate the dependency exemption to the parent who was not able to claim head of household status. The code provides that the custodial parent is entitled to the dependency exemption unless the custodial parent signs a written declaration waiving the right to claim the child for the taxable year and the noncustodial parent attaches a copy of that waiver to his or her tax return.  *Id.* (e)(2).  A "custodial parent," for purposes of the code, is the parent who has custody of the child for a greater portion of the calendar year.  *Id.* (e)(4)(A).  Consistent with the code, Minn. Stat. § 518A.38, subd. 7(a) (2016), provides:

> The court may allocate income tax dependency exemptions for a child and require a party who has the child in the party's physical custody for more than one-half of the calendar year to provide a properly executed declaration that releases the party's claim to the child as a dependent under section 152(e) of the Internal Revenue Code of 1986, as amended, to the other parent.

Here, the district court correctly concluded that equal parenting time between parents does not necessarily equate to both parents actually having the child in their care for the same number of nights during a taxable year.  The district court also determined

16

that the dependency exemption may be allocated between the parents without consideration of the number of nights the child spent with each parent during the year or which parent had the higher adjusted gross income. But due to reasonably expected yet unknown variations in actual parenting time, the district court determined that it could not reasonably predict which parent would qualify as the parent who could claim the other child-related tax benefits, including head of household status. The district court then explained that its allocation of the dependency exemption to the parent unable to claim head of household status provided an option in which each parent could receive some tax benefit every year while recognizing the difficulty in accurately ascertaining in advance which parent would be able to claim head of household in future tax years.

The district court also evaluated the potential tax benefits of the child to each parent. The district court found that if Hansen claimed head of household status, he would receive a tax benefit of $1,468. If Todnem claimed head of household status, she would receive a benefit of $245. The district court also found that the dependency exemption's tax benefit to Hansen and Todnem would be $1,777 and $1,335, respectively. The district court therefore concluded that its allocation of the dependency exemption to the parent who could not claim head of household status would lead to an equitable result because it would "ensure that each parent receives some of the tax benefits each year."

## C. Preemption

Hansen contends that federal law preempts a state district court's authority to allocate the dependency exemption on the basis of which parent claims head of household

status.[6]  He asserts that the code requires a state district court to allow, in a joint physical custody situation where the child resides with both parents the same amount of time during the year, the parent who has the higher gross income to claim the dependency exemption. *See* 26 U.S.C. § 152(c)(4)(B).  Therefore, Hansen claims that the district court was not authorized to allocate the exemption under the order and waiver process.

Citing this court's decision in *Gerardy v. Gerardy*, Hansen contends that because the district court could not determine which parent was the custodial parent for tax purposes, section 152(e) does not apply and the district court therefore had no basis for requiring either party to execute the waiver.[7]  *See* 406 N.W.2d 10, 14 (Minn. App. 1987) (holding that district court ignored express language of federal tax code when it awarded exemption to noncustodial parent, although no exception to general rule applied). Minnesota courts have clearly established that the district court has authority to award the dependency exemption to a noncustodial parent and to require a custodial parent to waive the exemption.  *Fudenberg v. Molstad*, 390 N.W.2d 19, 21 (Minn. App. 1986).  Though the district court did not explicitly identify whether Hansen or Todnem is the custodial

---

[6] His argument relies significantly on *Reichert v. Hornbeck*, a case from the Maryland Court of Special Appeals.  *See* 63 A.3d 76, 114–15 (Md. Ct. Spec. App. 2013).  However, *Reichert* is not binding on this court and is factually and legally distinguishable from this case.

[7] He also argues that the definition of "custodial parent" is distinct from the definition of "head of household."  Though it is true that in order to claim head of household status, the parent must not be married or a surviving spouse, the essential requirement that the district court considered — whether the child lives in one parent's principal place of abode for more nights in the taxable year than the other parent's — is not inconsistent with qualifying as the custodial parent and the head of the household.  *See* 26 U.S.C. §§ 2(b) (2012), 152(e)(4).

parent, it directed the parents to determine, at the end of each calendar year, who had the child in their custody for more than one-half of the calendar year. Based on that determination, the parents would then be able to designate the head of household and whichever parent receives this designation would be required to execute a waiver for the dependency exemption to the other parent. Contrary to Hansen's arguments, this process of designating the "head of household" based upon a determination of which parent had the child in his or her care for more than one-half of the calendar year does not violate either 26 U.S.C. § 152(e) or Minn. Stat. § 518A.38, subd. 7(a).

Under the implied conflict preemption doctrine, federal law preempts a state law if "it is impossible for a private party to comply with both the state and federal requirements" or if "the state law stands as an obstacle to the accomplishment and execution of the purpose and objective of Congress." *Gretsch v. Vantium Capital, Inc.*, 846 N.W.2d 424, 433 (Minn. 2014). The district court's order in this case does not violate either test.

First, 26 U.S.C. § 152(e)(2) permits allocation of the dependency exemption to a noncustodial parent through order and waiver. *Fudenberg*, 390 N.W.2d at 21. By allocating the exemption to the parent who cannot claim head of household status, the district court is allocating the exemption, through order and waiver, to the parent whose household is the child's principal place of abode for less than one-half of the taxable year. In doing so, the district court's order does not conflict with the requirements of section 152(e). *See* 26 U.S.C. § 152(e)(1)–(2).

Second, the legislative aim of 26 U.S.C. § 152(e), as it was amended in 1986, was to alleviate the administrative burden on the Internal Revenue Service (IRS) by reducing

its involvement in dependency disputes between parents. *Fudenberg*, 390 N.W.2d at 21. The district court's allocation of the dependency exemption does not interfere with Congressional intent because it has no financial or administrative impact on the IRS. For these reasons, we conclude that the district court's allocation of the dependency tax exemption was not preempted by federal law and did not violate Minn. Stat. § 518A.38, subd. 7(a).

"The allocation of the federal-tax exemptions is within the [district] court's discretion." *Ludwigson v. Ludwigson*, 642 N.W.2d 441, 449 (Minn. App. 2002). And, Minnesota courts permit deviating from the presumption that the exemption must be claimed by the custodial parent, if transferring the exemption to the noncustodial parent is in the child's best interests. *See Rogers v. Rogers*, 622 N.W.2d 813, 823 (Minn. 2001) ("The code does not preclude state district courts from allocating tax dependency exemptions to a noncustodial parent incident to the determination of child support and physical custody."); *see also Crosby v. Crosby*, 587 N.W.2d 292, 294, 296–98 (Minn. App. 1998) (awarding dependency exemption to father despite fact that mother was designated as primary physical custodian, physical care was equally divided between parents, and mother had substantial financial resources), *review denied* (Minn. Feb. 18, 1999).

Also, Hansen's proposal would not be in the child's best interests because it would incentivize the parents to keep the child in their care for more nights than the other in order to avoid the tie-breaker rule of section 152(c)(4)(B). Upon reviewing the district court's factual findings, particularly the comparison of the parents' resources and income available to support the child, it is clear that the district court's decision resolved these tax issues in

20

light of what would be in the child's best interests, namely ensuring adequate financial support and alleviating conflict between the parents.

### D. Consideration of the Statutory Factors in Allocating the Dependency Exemption

Hansen also asserts that the district court failed to make adequate findings regarding allocation of the dependency exemption. Hansen cites to four statutory factors that the district court is required to consider: (1) the financial resources of each party; (2) a parent's ability to provide for a child if not awarded the exemption; (3) whether one party or both parties would receive a tax benefit from the exemption; and (4) the impact of the exemption "on either party's ability to claim a premium tax credit or a premium subsidy." *See* Minn. Stat. § 518A.38, subd. 7(b)(1)–(4) (2016). If the parties contest the allocation, as is the case here, the district court must make findings to support its allocation decision. *See id.*, subd. 7(f) (2016).

Here, the district court properly evaluated the factors by considering the relative resources of the parties and the potential benefits that will result from the exemption. *See Crosby*, 587 N.W.2d at 298 (noting that parties' relative resources justified allocation of dependency exemption). The district court addressed the parties' incomes, finding that Hansen has approximately twice as much income as Todnem to support the child. The district court also highlighted that because Todnem has limited resources, an award to Hansen of all the child-related tax benefits would negatively impact her ability to provide for the child's needs. And in the chart and accompanying exhibits incorporated into its order, the district court identified the approximate value of the dependency exemption to

21

each parent. The district court also evaluated how allocation of the exemption to each party would impact other tax benefits. For example, the district court recognized that its allocation of the dependency exemption would leave both parents unable to claim the child tax credit. Based on the district court's consideration of the relevant statutory factors and the adequate findings in its order for allocation, we conclude that the district court did not abuse its discretion in allocating the dependency exemption to the parent who is not able to claim head of household status for any given taxable year.

## D E C I S I O N

In its computation of basic child support, the district court correctly interpreted Minn. Stat. § 518A.35, subd. 1(e), in capping the combined basic child support obligation but not the parents' combined PICS. The district court made sufficient findings regarding the best interests factors and did not abuse its discretion in denying Hansen's request to provide in-home, before and after school child care. Because it is appropriate for the district court to take into account deductibles and co-payments, along with the monthly premiums, when considering a policy's affordability, the district court also did not abuse its discretion in finding Todnem's health care policy to be more affordable than Hansen's policy. And, because the district court's order did not conflict with federal law, the district court did not abuse its discretion in allocating the dependency exemption to the parent who could not claim head of household status.

**Affirmed.**