McKeig, Justice.
Appellant Birch Hansen ("Hansen") and respondent Suzanne Todnem ("Todnem") established a parenting plan for their son, K.T., on July 24, 2015. On August 3, 2015, Hansen moved in the Ramsey County District Court for additional parenting time to provide before- and after-school child care for K.T. while Todnem was working. The district court denied Hansen's request on the ground that it was not in K.T.'s best interests. Hansen appealed, arguing that the district court failed to make detailed and specific findings on each of the factors listed in Minn. Stat. § 518.17, subd. 1(a) (2016) ("the best-interest factors"), and relied on improper factors to assess K.T.'s best interests. The court of appeals affirmed, holding that Hansen's request for child-care parenting time was an "insubstantial"
*595 modification and thus did not require detailed and specific findings on every best-interest factor. We affirm the court of appeals, though on different grounds.
FACTS
The parties in this case were in a romantic relationship for roughly 5 years, but never married. On September 1, 2010, the parties had their son, K.T. Shortly after K.T.'s birth, Todnem ended the relationship.
Through mediation with a parenting consultant, the parties established a parenting time schedule that gave Hansen parenting time on Sundays, Tuesdays, and Fridays, as well as three overnights at his home and four co-parenting overnights at Todnem's home every 2 weeks. On February 2, 2014, however, Todnem informed Hansen that he was no longer welcome in her home for co-parenting overnights. Instead, Todnem offered Hansen a fourth overnight at his home with K.T. every 2 weeks. Hansen petitioned the Ramsey County Family Court for joint custody and equal parenting time on February 5, 2014.
The parties stipulated to joint legal and physical custody with equal parenting time on March 18, 2015. After 4 months of negotiation with multiple mediators, the parties submitted a written parenting plan for the court's approval. The district court approved the parenting plan on July 24, 2015. Only 10 days later, Hansen moved for additional parenting time to provide child care for K.T. before and after school on Todnem's parenting days. Todnem opposed this motion, preferring to use K.T.'s school's child-care program, the Discovery Club, for before- and after-school care.
The district court denied Hansen's request. Finding that Hansen had not explained why he did not seek child-care parenting time during 4 months of mediation, the district court expressed concern that Hansen was trying to "end run" the parenting time agreement. Moreover, the district court concluded that Hansen's proposal was not in K.T.'s best interests, finding that the proposed arrangement would continue ongoing conflict between Hansen and Todnem, increase the number of transitions for K.T., and deprive K.T. of a predictable schedule if Hansen was ever unavailable to provide before- or after-school care.
On appeal, Hansen argued that the district court's decision was based on irrelevant or repealed factors, and that the district court erred by failing to make detailed findings on the newly amended best-interest factors listed in Minn. Stat. § 518.17, subd. 1(a) (2016). Relying on Funari v. Funari , 388 N.W.2d 751 (Minn. App. 1986), the court of appeals held that "[m]ere clarifications" and "insubstantial modifications" of parenting time fell entirely within the discretion of the district court and did not need to be supported by specific findings. Hansen v. Todnem , 891 N.W.2d 51, 58 (Minn. App. 2017) (citation omitted) (internal quotation marks omitted). The court of appeals acknowledged the 2015 amendment to Minn. Stat. § 518.17 (2016), but held that the amendment did not abrogate the common-law distinction between substantial and insubstantial parenting-time modifications. Id. Concluding that Hansen's request sought "a minimal change in parenting time"-an "insubstantial modification"-the court of appeals affirmed the district court. Id. at 58-59. We granted review.[1]
*596 ANALYSIS
I.
District courts have broad discretion on matters of custody and parenting time. See Goldman v. Greenwood , 748 N.W.2d 279, 281-82 (Minn. 2008). Our review "is limited to whether the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." In re Custody of N.A.K. , 649 N.W.2d 166, 174 (Minn. 2002). Interpretation of the custody and parenting time statutes, however, is subject to de novo review. See Goldman , 748 N.W.2d at 282.
A.
Minnesota Statutes § 518.17 lists 12 factors bearing on the best interests of the child that the court must consider "for purposes of determining issues of custody and parenting time." Minn. Stat. § 518.17, subd. 1(a). This statute was last amended effective August 1, 2015, just 2 days before Hansen filed his motion. Act of May 14, 2015, ch. 30, art. 1, §§ 3-5, 2015 Minn. Laws. 271, 271-75; see Minn. Stat. § 645.02 (2016). The statute now provides that district courts "must make detailed findings on each of the factors ... based on the evidence presented and explain how each factor led to its conclusions and to the determination of custody and parenting time." Minn. Stat. § 518.17, subd. 1(b)(1). Hansen argues that the district court abused its discretion in denying his motion because it did not provide specific, detailed findings on each best-interest factor.
Before the 2015 amendment, Minn. Stat. § 518.17 addressed only custody, and did not mention parenting time. Minn. Stat. § 518.17 (2014) ; see also Newstrand v. Arend , 869 N.W.2d 681, 691 (Minn. App. 2015) (noting that Minn. Stat. § 518.17, subd. 1(a), did not address parenting time). Now, however, section 518.17 expressly mentions parenting time. Minn. Stat. § 518.17 (2016). We assume that, when the Legislature amends a statute, it intends to change the law. Friedlander v. Edwards Lifesciences, LLC , 900 N.W.2d 162, 166 (Minn. 2017). We therefore conclude that the Legislature now intends for Minn. Stat. § 518.17 to apply to parenting time as well as initial custody determinations.
We have previously recognized, however, that establishing custody is controlled by a different statute than modifying custody. See State ex rel. Gunderson v. Preuss , 336 N.W.2d 546, 547 (Minn. 1983) (recognizing that Minn. Stat. § 518.17 applies to initial custody determinations and Minn. Stat. § 518.18 (2016) governs custody modifications); cf. Morey v. Peppin , 375 N.W.2d 19, 23-24 (Minn. 1985) (holding that Minn. Stat. § 518.17 governs custody proceedings that are consolidated with paternity actions, but Minn. Stat. § 518.18 governs custody proceedings that are commenced after paternity was established). Here, too, the Legislature has enacted a separate statute governing parenting plan modifications: Minn. Stat. § 518.175 (2016). Applying the logic of Gunderson and Morey , we conclude that Minn. Stat. § 518.17 applies to the creation and initial approval of parenting plans, but Minn. Stat. § 518.175 still governs parenting time modifications.
B.
The court of appeals relied on its own common-law distinction that "significant changes" to parenting plans must be supported by specific findings, whereas "insignificant changes and clarifications"
*597 do not require such findings. Hansen , 891 N.W.2d at 58. The court of appeals first established a common-law distinction between "significant" modifications and "insignificant changes or clarifications" in Chapman v. Chapman , 352 N.W.2d 437, 441 (Minn. App. 1984). We have never addressed this distinction, but now hold that it is unsupported by the text of the parenting-time statutes. Nothing in the language of the statutes demonstrates that the Legislature intended to distinguish between substantial and insubstantial parenting time modifications. The language in the statutes does not refer to the degree or magnitude of the modification. And "[w]e will not supply that which the legislature purposefully omits or inadvertently overlooks" when interpreting statutes. Green Giant Co. v. Comm'r of Revenue , 534 N.W.2d 710, 712 (Minn. 1995). We therefore decline to read the court of appeals' substantiality distinction into Minn. Stat. § 518.17 and Minn. Stat. § 518.175.
The court of appeals also noted that Minn. Stat. § 518.175, subd. 5, "does not explicitly require a district court to make particularized findings on all the best interests factors enumerated in Minn. Stat. § 518.17, subd. 1(a)." Hansen , 891 N.W.2d at 57-58. The court of appeals' reliance on subdivision 5 is misplaced. Although subdivision 5 does govern parenting time modification requests, subdivision 8 is specific to requests for "additional parenting time ... to provide child care while the other parent is working." Minn. Stat. § 518.175, subd. 8. Because subdivision 8 specifically addresses the situation at issue here-Hansen's request for parenting time while Todnem was working-we apply that provision. See Connexus Energy v. Comm'r of Revenue , 868 N.W.2d 234, 242 (Minn. 2015) (noting that a specific statutory provision controls a conflicting general provision, which "often applies in situations in which the general and the specific provisions exist side by side" (citation omitted) (internal quotation marks omitted) ).
C.
Although we disagree with the court of appeals' analysis, we nevertheless reach the same conclusion: that the district court was required to consider only the relevant best-interest factors, and was not required to make specific findings on every factor listed in Minn. Stat. § 518.17.
Requests to modify an existing parenting plan for child-care parenting time are governed by Minn. Stat. § 518.175, subd. 8. The district court has broad discretion to grant such requests, and may do so if they are "reasonable and in the best interests of the child, as defined in section 518.17, subdivision 1." Minn. Stat. § 518.175, subd. 8. But, under subdivision 8, the district court must consider three factors: "(1) the ability of the parents to cooperate; (2) methods for resolving disputes regarding the care of the child, and the parents' willingness to use those methods; and (3) whether domestic abuse, as defined in section 518B.01, has occurred between the parties."[2] Id.
Here, the district court's factual findings show that it did not abuse its broad discretion when it declined to award Hansen additional parenting time under subdivision 8. Critically, the district court found that Hansen's proposed arrangement would increase the likelihood of continued conflict between him and Todnem.
*598 This finding relates to the parents' ability to cooperate and to their willingness to use dispute-resolution methods. See Minn. Stat. § 518.175, subd. 8(1)-(2). The district court also found that it took 4 months and the assistance of multiple professionals for the parties to reach an agreement, which reflects on their ability to cooperate. Further, the district court's finding that Hansen moved to modify the schedule just 2 weeks after it had been established, and appeared to be trying to end run the agreement, goes to the parties' willingness to use dispute resolution methods. Although the district court did not make any findings regarding domestic abuse in its order denying Hansen's request, the record does show that the district court had previously considered this factor.[3] Based on the district court's order and the record before us, we are satisfied that the district court fulfilled its duty under Minn. Stat. § 518.175, subd. 8, to consider the three listed factors.[4]
Minnesota Statutes § 518.175, subd. 8, does reference Minn. Stat. § 518.17, subd. 1. But, unlike Minn. Stat. § 518.17, subd. 1(b)(1), nothing in the text of Minn. Stat. § 518.175, subd. 8, requires the district court to make specific and detailed findings on the best-interest factors. Rather, subdivision 8 of section 518.175 provides that the district court "may" approve arrangements that are "reasonable and in the best interests of the child, as defined in section 518.17, subdivision 1." Minn. Stat. § 518.175, subd. 8.
Hansen argues that subdivision 8's reference to Minn. Stat. § 518.17 requires a court to make detailed, specific findings on all relevant best-interest factors.[5] We disagree. The statute requires that the child-care arrangement be "reasonable and in the best interests of the child, as defined in section 518.17, subdivision 1." Minn. Stat. 518.175, subd. 8. That language references only the definition of the best interests of the child, which includes the factors listed in Minn. Stat. § 518.17, subd. 1(a). A reference to the definition does not, however, compel detailed findings under Minn. Stat. § 518.17, subd. 1(b). The text of Minn. Stat. § 518.175, subd. 8, lists only three factors that a court must consider . Cf. Bouman v. Reiter , 297 Minn. 494, 210 N.W.2d 215, 215-16, 216 n.2 (1973) (recognizing that written findings of fact are "not technically required" by the rules of civil procedure).
Moreover, when the Legislature added a detailed-findings requirement to Minn. Stat. § 518.17, subd. 1(b)(1), it simultaneously amended two subdivisions of Minn. Stat. § 518.175. See Act of May 14, 2015, ch. 30, art. 1, § 3, 2015 Minn. Laws 271, *599 271-73 (amending Minn. Stat. § 518.17 ); see also id. at §§ 6-7, 2015 Minn. Laws at 275-76 (amending Minn. Stat. § 518.175, subds. 1, 6 ). If the Legislature had intended to require specific and detailed findings on parenting-time modification requests, it could have amended Minn. Stat. § 518.175 accordingly. Yet, in both the 2015 amendment and in a subsequent 2016 amendment, the Legislature did not add such language to the parenting-time modification statute. See Act of June 1, 2016, ch. 189, art. 15, § 16, 2016 Minn. Laws 1101, 1116-17 (amending Minn. Stat. § 518.175, subd. 5 ). We therefore conclude that the Legislature did not intend to require detailed findings on each and every best-interest factor when a court decides a request to modify parenting time. Because neither our rules nor our precedent provide an alternative basis to require such findings, we hold that parenting time modifications under subdivision 8 do not require the same detailed, specific findings that an order establishing custody or parenting time now requires.
II.
Hansen next argues that the district court relied on factors that were either repealed or irrelevant. Again, we hold that the district court was required to consider only the relevant best-interest factors in section 518.17, subdivision 1, and was not required to make specific and detailed findings on those factors when considering Hansen's modification request. Any findings of fact that a district court does make regarding the best-interest factors are reviewed for clear error. See Rasmussen v. Two Harbors Fish Co. , 832 N.W.2d 790, 797 (Minn. 2013).
First, Hansen claims that the district court improperly focused on "stability." Among the best-interest factors is "the willingness and ability of each parent ... to maintain consistency and follow through with parenting time." Minn. Stat. § 518.17, subd. 1(a)(7). Because "stability" relates to parents' willingness and ability to maintain consistent parenting time, as well as their ability to cooperate, both of which are factors that the district court is required to consider under Minn. Stat § 518.175, subd. 8, we conclude that the district court did not abuse its discretion by considering "stability" in reaching its decision.
Second, Hansen argues that Minn. Stat. § 518.17, subd. 1(a)(10), requires a district court to find that it was in K.T.'s best interest to maximize time with either Hansen or Todnem. Subdivision 1(a)(10) requires courts to consider "the benefit to the child in maximizing parenting time with both parents and the detriment to the child in limiting parenting time with either parent." Minn. Stat. § 518.17, subd. 1(a)(10). But the district court's order does not limit parenting time with either parent, because when K.T. is at Discovery Club, he is with neither parent. The language of subdivision 1(a)(10) does not state or imply that time spent away from both parents is detrimental to the child. Moreover, K.T. would only attend Discovery Club on days when Todnem had parenting time, meaning Hansen's parenting time would not be limited at all. No statute prohibits Todnem from using a third-party child-care service on her parenting time days, and we therefore conclude that the district court did not abuse its discretion in allowing her to do so.
Third, Hansen claims that the district court's findings about potential conflict between him and Todnem were irrelevant and should not have been considered. But potential conflict between the parents may be highly relevant to the parents' ability to cooperate, which is one of the three factors that the district court is required *600 to consider. See Minn. Stat. § 518.175, subd. 8(1). The district court did not abuse its discretion by considering potential conflict between Hansen and Todnem; in fact, the district court would have erred had it not weighed this key factor in determining whether Hansen's request for additional parenting time was reasonable and in K.T.'s best interests. In short, Hansen's arguments that the district court relied on improper factors are unavailing.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals, though on other grounds.
Affirmed.

In addition to parenting time, Hansen raised disputes regarding child-support calculations, K.T.'s medical coverage, and the allocation of the federal tax dependency exemption before the court of appeals. Hansen , 891 N.W.2d at 55. Because we only granted review of the parenting time issue, the other three issues are not before us.

The district court must make sufficient findings to enable appellate review. Woodrich Constr. Co. v. State , 287 Minn. 260, 177 N.W.2d 563, 565 (1970). The text of subdivision 8, however, does not require detailed, specific findings on each of the three listed factors. See Minn. Stat. § 518.175, subd. 8.

Specifically, the district court initially determined that Todnem had raised a prima facie case of domestic abuse and was entitled to sole custody. Subsequently, however, the district court approved a joint custody agreement between the parties. It did not conclude that domestic abuse had occurred.

As the dissent notes, the district court also made a finding regarding the relative merits of parental care and out-of-home child care. The court of appeals declined to consider this finding in its analysis. Hansen , 891 N.W.2d at 57 n.4. We, too, decline to consider this finding, and base our decision today on the other findings made by the district court. Because the other findings are sufficient to justify the district court's decision, the finding to which the dissent objects is immaterial. "[U]nnecessary" and "immaterial" findings do not require reversal, because they are "not essential to support the conclusions of law." McCue v. Barrett , 99 Minn. 352, 109 N.W. 594, 596 (1906) ; Snell v. Snell , 54 Minn. 285, 55 N.W. 1131, 1132 (1893).

Hansen expressly concedes, however, that the statutory text of Minn. Stat. § 518.175, subd. 8, does not require specific findings on every best-interest factor in Minn. Stat. § 518.17, subd. 1.