*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0452**

In re the Custody of A.W.W:

Nicholas Taylor Wehrwein,
Respondent,

vs.

Patricia Katrine Hascall,
Appellant.

**Filed June 17, 2024
Affirmed
Segal, Chief Judge**

Washington County District Court
File No. 82-FA-20-2401

Nicholas Wehrwein, St. Francis, Minnesota (pro se respondent)

Patricia Hascall, Hugo, Minnesota (pro se appellant)

Considered and decided by Reyes, Presiding Judge; Segal, Chief Judge; and Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**SEGAL**, Chief Judge

In this appeal, appellant-mother argues that the district court's factual findings and child-support calculation are erroneous. Mother also argues she should have been awarded sole legal custody and that respondent-father should not have been awarded unsupervised

parenting time. Because appellant fails to demonstrate any clear error in the district court's findings of fact or other abuse of discretion, we affirm.

## FACTS

Appellant Patricia Katrine Hascall (mother) and respondent Nicholas Taylor Wehrwein (father) are the biological parents of a minor child, A.W.W. (the child), born in 2018. The parties were never married but were in a relationship from 2016 until 2020. The parties signed a Recognition of Parentage of the child in accordance with Minn. Stat. § 257.75 (2022). Father filed a petition for custody on June 10, 2020, and mother responded with a counterpetition.

The child is nonverbal, has a diagnosis of post-traumatic stress disorder, and "has special needs that require special parenting arrangements." Mother brings the child to weekly speech, mental-health, and occupational-therapy appointments.

In October 2020, the district court conducted a review hearing and issued an order appointing a guardian ad litem (GAL). Following the review hearing, the district court also awarded the parties temporary joint legal custody and mother temporary sole physical custody, subject to reasonable parenting time for father.

The GAL submitted correspondence and a report to the court in 2021. The district court adopted the GAL's recommendations, including that father have virtual parenting time with the child three times per week, monitored therapeutic visits once per week, and that the parties share any costs equally.

As part of the proceedings, the district court also required the parties to secure a parenting-time supervisor, but they had difficulty agreeing on who that should be. Father

2

suggested his aunt, but mother refused. Mother and father attempted to use a parenting-time supervisor from FamilyWise but, upon mother's suggestion, the parties agreed to use Traverse Counseling & Consulting. Father conducted therapeutic parenting sessions with a Traverse therapist throughout 2021. But because father's therapist and mother could not see eye-to-eye, and father would not wear a pandemic-related face mask as requested, the parties transitioned to using a parenting-time supervisor from Relationships, LLC in 2022. The parenting-time schedule, initiated by Traverse and implemented by Relationships, provided for graduated levels of father's involvement in the child's life, from the therapeutic parenting sessions, to supervised parenting sessions, and eventually unmonitored parenting sessions. After father completed the required therapeutic parenting sessions, the parties transitioned to the use of a private parenting-time supervisor in 2022.

Before father's supervised visits could start, the parenting-time supervisor was to get acquainted with the child through two visits at mother's house, which took some time to arrange. The first supervised parenting visits between father and the child did not occur until August 2022, two years after father filed his parenting-time and custody petition, and a year after the parties agreed to the parenting-time schedule. Father proceeded to have six different two-hour supervised parenting visits with the child, the first five at a community center and the last at father's home. The parenting-time supervisor submitted a report summarizing these visits.

The district court held a court trial on September 23 and October 7, 2022, to address custody, parenting time, and child support. Father testified on his own behalf and called

two other witnesses, including the parenting-time supervisor and his therapist from Traverse. Mother testified on her own behalf and called her mother as a witness.

At trial, mother expressed concerns about father's history of alcohol use. Mother believed father's alcohol use affected his ability to parent safely. Father had two previous driving infractions related to his alcohol use. Mother also testified to concerns for her and the child's safety around father, explaining that the child was present in one instance when father threatened to "throw [her] through the wall." Mother ultimately testified that she "would like to see [father] become more involved with [the child]'s therapists and to learn what it is that [the child] really needs." Mother also emphasized that "consistency and a routine is paramount for [the child]."

Father testified that he was sober due in part to a 2018 incident and mother's ultimatum that she would take the child away from him if he did not stop drinking. Father stated he was committed to staying sober. He submitted a chemical-health assessment, compliant with rule 25 standards, that concluded father did not have a substance-use disorder. Father also provided a random drug test that was negative. The district court determined that father's testimony regarding his sobriety was credible.

The district court's final order granted the parents joint legal custody and mother sole physical custody, subject to father's unsupervised parenting time. The order required father to pay child support in the amount of $794 per month, effective February 1, 2023.

**DECISION**

Mother asserts two primary arguments on appeal.[1] She challenges the district court's underlying factual findings and determinations related to custody and parenting time. *See* Minn. Stat. §§ 518.17, .175 (2022). Mother also challenges the district court's award of joint legal custody, arguing that it is too difficult to make decisions with father, and challenges the award of unsupervised parenting time to father. Mother further argues that the district court understated father's income for the purpose of determining father's basic child-support obligation and erred by allocating tax-dependency exemptions equally to mother and father in alternating years.

We review the issues asserted by mother on appeal for abuse of discretion. *Hansen v. Todnem*, 908 N.W.2d 592, 596 (Minn. 2018); *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022). Under that standard, we review the district court's factual findings for clear error. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000). A district court's "findings are clearly erroneous when they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted); *Bayer v. Bayer*, 979 N.W.2d 507, 513 (Minn. App. 2022) (citing *Kenney* in a family-law appeal). When applying the clear-error standard of review, we view the evidence in the light most favorable to the findings, do not reweigh the evidence, do not find our own facts, and do not reconcile conflicting evidence. *Kenney*, 963 N.W.2d at 221-22. Indeed, "an appellate

---

[1] Father has not filed a brief in this matter, but this court ordered that the appeal proceed pursuant to Minn. R. Civ. App. P. 142.03.

court need not go into an extended discussion of the evidence to prove or demonstrate the correctness of the findings of the trial court." *Id.* at 222 (quotation omitted).

## I. Custody and Parenting Time

When determining issues of legal custody, physical custody, and parenting time, the district court evaluates the 12 best-interests factors listed in Minn. Stat. § 518.17, subd. 1(a). "Caselaw 'leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations.'" *Ewald v. Nedrebo*, 999 N.W.2d 546, 551 (Minn. App. 2023) (quoting *Vangsness*, 607 N.W.2d at 477), *rev. denied* (Minn. Feb. 28, 2024).

Mother first argues that, although she was granted sole physical custody, she should also have been awarded sole legal custody. Mother bases her argument on several challenges to the district court's factual findings, all centered on the best-interests factors. As relevant here, the district court found: mother had been the primary caregiver for most of the child's life, including attending to the child's special needs, but was inflexible throughout the custody dispute in facilitating parenting time with father; both parents were willing and able to care for the child; father is a "positive influence" on the child; father's substance-use issues were in the past and did not affect his current ability to parent; and it would be "detrimental to [the child]" to continue to limit father's parenting time moving forward. The district court also determined that no domestic abuse had occurred that would shift the custody presumptions. *See* Minn. Stat. § 518.17, subd. 1(b)(9). Based on its findings, the district court rated most of the best-interests factors as being neutral, with one factor favoring mother and at least two favoring liberal parenting time for father.

In support of her argument that the district court erred in finding no domestic abuse occurred, mother points to her testimony that father had threatened to throw her through a wall, and her mother's testimony that father once expressed his desire to physically discipline the child. Mother also discusses her allegation that the child was injured during a supervised parenting visit with father, including a scrape on the child's elbow and other bruises. Under the clear-error standard of review, however, we must affirm a district court's finding of fact if there is evidence in the record supporting it. *See Kenney*, 963 N.W.2d at 221-22.

The record here contains father's denial that he threatened mother or intended to harm the child. In addition, the parenting-time supervisor, who was present when the child was allegedly injured, testified that she "did not see any point where [the child] looked to be injured," and that, "in [her] professional opinion . . . it would not be unusual for a child to get a bump, a scrape or a bruise during physical play." Father's therapist also testified that he did not have any concerns about, and the GAL did not report any behavior in the child indicative of, domestic abuse. The district court's finding thus has support in the record and we discern no clear error in the court's determination that no domestic abuse occurred.

We also discern no abuse of discretion by the district court in awarding joint legal custody of the child based on the district court's best-interests findings. *See Thornton v. Bosquez*, 933 N.W.2d 781, 794 (Minn. 2019) (stating that "[b]ecause these challenges [to the custody award] turn on a balancing of the best interests of the child, we review the district court's determination for an abuse of discretion"). Except in cases involving

domestic abuse between the parents, there is a rebuttable presumption that joint legal custody is in the best interests of the child. Minn. Stat. § 518.17, subd. 1(b)(9). Mother fails to point to evidence in the record that would overcome this presumption. The district court's best-interests findings support the district court's award of joint legal custody, and we affirm the district court's determination.

Turning to mother's argument that father should not have been granted unsupervised parenting time, the district court must grant "such parenting time . . . as will enable the child and the parent to maintain a child to parent relationship that will be in the best interests of the child." Minn. Stat. § 518.175, subd. 1(a). "In the absence of other evidence, there is a rebuttable presumption that a parent is entitled to receive a minimum of 25 percent of the parenting time for the child." *Id.*, subd. 1(g).

The district court here structured a tiered parenting-time schedule that allowed father to remain in the child's life, which it determined was in the child's best interests based on a thorough evaluation. The district court also found, with support in the record, that father complied with the graduated schedule to move from supervised to unsupervised parenting time. Because the record supports the district court's factual findings, and it is a goal of custody and parenting-time determinations to keep both parents in the child's life as much as is appropriate under the circumstances, we conclude the district court did not abuse its discretion when it granted unsupervised parenting time to father.

## II.    Child Support

Mother also challenges the amount of child support ordered by the district court. "A court's determination of income must be based in fact and will stand unless clearly

erroneous." *Newstrand v. Arend*, 869 N.W.2d 681, 685 (Minn. App. 2015) (quotation omitted), *rev. denied* (Minn. Dec. 15, 2015). But whether a source of funds is considered to be income for child-support purposes is a question of law we review de novo. *Sherburne Cnty. Soc. Servs. ex rel. Schafer v. Riedle*, 481 N.W.2d 111, 112 (Minn. App. 1992).

To determine the existence and amount of a basic child-support obligation, the district court must first establish the gross income of each parent. Minn. Stat. §§ 518A.29, .34 (2022). "[G]ross income" is "any form of periodic payment to an individual, including, but not limited to, salaries, wages, [and] commissions." Minn. Stat. § 518A.29(a). After finding gross income, the district court must refer to the statutory guidelines to determine the presumptively appropriate amount of basic child support, and must calculate each parent's proportionate share of that amount. Minn. Stat. § 518A.35 (2022). The court must also consider certain statutory factors if it chooses to deviate from the presumptive child-support obligation. Minn. Stat. § 518A.43, subd. 1 (2022).

Mother claims the district court erred by (1) incorrectly calculating father's income; (2) failing to award past child support; and (3) allowing each party to claim tax-dependency exemptions for the child in alternating years. Although we afford self-represented litigants, like mother, leeway in making arguments on appeal, *Carpenter v. Woodvale, Inc.*, 400 N.W.2d 727, 729 (Minn. 1987), mother is not relieved of her burden of identifying the errors she claims were made by the district court. *See Waters v. Fiebelkorn*, 13 N.W.2d 461, 464-65 (Minn. 1944) ("[O]n appeal error is never presumed. It must be made to appear affirmatively before there can be reversal . . . [and] the burden of showing error

rests upon the one who relies upon it."); *Loth v. Loth*, 35 N.W.2d 542, 546 (Minn. 1949) (quoting *Waters* in a family-law appeal).

Mother challenges the district court's calculation of father's income, but she fails to identify the error or otherwise point to evidence in the record that might demonstrate a calculation mistake. Father provided paystubs documenting his actual income and that is what the district court utilized in its calculations for child-support purposes. The district court found that father's income was $5,132 per month, and that mother received $941 per month in Social Security disability benefits and $245 per month in dependent benefits. Based on father's income, and the number of each parent's overnights with the child, the district court found "it equitable to set support at $794 per month." The district court's child-support calculation does not appear to deviate from the method for calculating basic support provided in section 518A.35. We thus discern no clear error in the district court's finding concerning father's income, or its child-support calculation.

Mother next contends that the district court erred by denying her request for the payment of child support retroactive to February 2022, which is when father obtained his new job. The district court made the award effective as of February 2023, one week after issuance of its order. Minnesota Statutes section 257.66, subdivision 4 (2022), provides that the district court "shall limit the parent's liability for past support of the child to the proportion of the expenses that the court deems just, which were incurred in the two years immediately preceding the commencement of the action." Under the statute, determinations concerning liability for past support are committed to the district court's discretion. *See Spurck v. Civ. Serv. Bd.*, 42 N.W.2d 720, 724 (Minn. 1950) (discussing

discretionary powers conferred by statute); *see also, e.g., Davis v. Davis*, 631 N.W.2d 822, 825 (Minn. App. 2001) (reviewing a previous permutation of section 257.66 and noting that the district court has broad discretion to determine child-support obligations, including past child support); *Korf v. Korf*, 553 N.W.2d 706, 710-11 (Minn. App. 1996) (holding a district court may order retroactive child support in a final dissolution judgment if it considers all payments made since the separation and the relevant facts and circumstances).

The district court here explained that it was denying past child support, at least in part, because father incurred "significant expenses . . . for supervised and therapeutic parenting time services," despite an order requiring the parties to split costs equally. Father paid both his and the bulk of mother's share of the costs. Such balancing of financial burdens was within the district court's discretion and mother has failed to persuade us otherwise.

As to mother's challenge to the district court's allocation of tax-dependency exemptions, district courts have discretion under Minn. Stat. § 518A.38, subd. 7 (2022), to allocate the exemptions between parents after evaluating relevant factors. *See Hansen v. Todnem*, 891 N.W.2d 51, 64 (Minn. App. 2017) (holding that "the district court did not abuse its discretion in allocating the dependency exemption to the parent who could not claim head of household status"), *aff'd on other grounds*, 908 N.W.2d at 595 n.1 (affirming parenting-time issue but declining to review allocation of tax-dependency exemptions). Minnesota courts also may depart from the presumption in federal law that tax-dependency exemptions must be claimed by the custodial parent if the allocation is "incident to the

11

determination of child support and physical custody." *Id.* at 63 (quoting *Rogers v. Rogers*, 622 N.W.2d 813, 823 (Minn. 2001)).

Although distributing tax-dependency exemptions equally means father will claim the exemptions as a noncustodial parent every other year, father's share of the court-ordered parenting time is not less than 10%, and allocation of the exemptions is therefore within the district court's discretion. *See* Minn. Stat. § 518A.38, subd. 7(d) (stating tax-dependency exemptions must not be allocated to "[a] party with less than ten percent of court-ordered parenting time" unless the parties otherwise agree); *Crosby v. Crosby*, 587 N.W.2d 292, 294, 298 (Minn. App. 1998) (awarding father tax-dependency exemptions despite mother's status as the primary physical custodian), *rev. denied* (Minn. Feb. 18, 1999); *Ludwigson v. Ludwigson*, 642 N.W.2d 441, 449 (Minn. App. 2002) ("The allocation of federal-tax exemptions is within the [district] court's discretion."). We also note that, if mother's dependent benefits are impacted because mother will only be able to claim a tax-dependency exemption in alternate years, she can move for a modification at that time. *See* Minn. Stat. § 518A.38, subd. 7(e). On this record, we thus discern no abuse of discretion by the district court in its allocation of the tax-dependency exemptions.

**Affirmed.**