*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1350**

Joseph Deidrick,
Respondent,

vs.

Clarissa Dozier,
Appellant.

**Filed June 17, 2024
Affirmed
Jesson, Judge**[*]

Stearns County District Court
File No. 73-FA-18-9481

Colleen L. Case, Daniel J. Van Loh, Capistrant Van Loh, P.A., Minneapolis, Minnesota; and

Lynne M. Ridgway, Reichert Wenner, P.A., St. Cloud, Minnesota (for respondent)

Julie Wacker Hanjani, Hutchinson, Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Ede, Judge; and Jesson, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**JESSON**, Judge

This parenting dispute centers on where the parties' child shall attend school, as well as related parenting-time schedules. Appellant-mother challenges the district court's order modifying the parties' parenting-time schedule and determining that the child attend school in Sartell. Mother argues that the district court applied the wrong legal standard when it granted respondent-father's motion to modify the parties' parenting-time schedule. In the alternative, mother asserts that the district court's findings on the best interests of the child in relation to both the parenting-time schedule and the child's school are not supported by the record. Because the district court applied the correct legal standard and its findings on the best interests of the child are supported by the record, we affirm.

## FACTS

Appellant Clarissa Dozier and respondent Joseph Deidrick are the parents of a five-year-old child. In April 2019, the district court entered a judgment based on the parties' agreement (the stipulated judgment) that awarded the parties joint legal and physical custody of the child. The stipulated judgment provided the following:

> Mom's home will be considered the primary residence. In August 2021, Dad can request, through mediation and/or motion to the Court, parenting time up to 50% but any equal parenting time schedule will not affect the primary residence designation. Parenting time shall be determined under the best interest standard. Any restriction of Mom's parenting time down to 50% will not require a showing of endangerment.

In September 2021, the parties agreed to modify the stipulated judgment. Based on that agreement, the district court entered an amended judgment and provided a new parenting-time schedule, which gave father five overnights with the child and mother nine overnights with the child for every two weeks. The parties agreed to the modification around the time that mother was preparing to move to Hutchinson, which is approximately one hour from father's home in Sartell.

In January 2023, mother moved for an order that the child attend kindergarten in Hutchinson starting in the fall. Mother also sought to modify the parenting-time schedule so that she would have 10 overnights with the child for every two weeks during the school year and eight overnights for every two weeks during the summer. Father opposed this proposed modification, instead moving for an order that the child attend school in the Sartell School District. Father further moved to modify the parenting-time schedule such that he would have eight overnights for every two weeks during the school year and five overnights for every two weeks during the summer.

The district court held a hearing on the parties' motions in February 2023. In its subsequent order, the court, referring back to the stipulated judgment, determined that the best-interest standard applied to the parties' motions to modify parenting time. And given that the parties were joint legal custodians of the child, that standard also applied to the parties' motions regarding school choice.

The district court then made findings on how the parties' competing motions served the best interests of the child pursuant to three factors enumerated by Minnesota Statutes section 518.17 (2022). The court found that father's proposed schedule "results in

approximately 50-50 parenting time with 183 overnights for [mother] and 182 overnights for [father]." In contrast, the district court noted that mother's proposed schedule was "infeasible" for father due to his work schedule and, despite appearing to increase father's parenting time from the September 2021 amended parenting-time schedule, "represent[ed] a decrease in the meaningful time [father] would be able to spend with the child." The district court found that father's proposed schedule therefore "maximize[d] the meaningful time the child spends with both parents," while also limiting the number of times the child would need to be transported between the parties.

Lastly, the district court acknowledged the parties' competing arguments regarding the child's schooling. Father argued that "the Sartell School District is a highly ranked school district and will better serve the child's educational needs." Mother argued that "attending the Hutchinson School District will allow the child to attend school alongside children from her preschool with whom she has developed friendships." The district court found that "[a]lthough the child has developed a connection to Hutchinson through attending preschool there, both parties maintain a strong connection to the Sartell area through their employment and families." Ultimately, the district court determined that father's requests better served the best interests of the child, and it ordered that the child attend school in Sartell and that the parties follow father's proposed schedule.

Following the district court's order, mother moved for amended and additional findings. In support of her motion, mother filed an affidavit in which she claimed that she worked from home in Hutchinson—not Sartell—full time. And Mother claimed that she and her family did "not have a 'strong connection' to Sartell." Mother further disputed the

4

district court's finding that father's proposed schedule afforded the parents equal parenting time, claiming that she would only receive 48.7% of the parenting time under father's schedule.

In ruling on mother's motion, the district court determined that it was "precluded from considering evidence outside the record previously submitted." The court also concluded that mother "fail[ed] to identify errors in fact or law in the court's [order] that would compel the court to amend its findings." Accordingly, the district court denied mother's motion for amended and additional findings.

Mother appeals.

**DECISION**

Mother argues that the district court applied the incorrect legal standard in granting father's motion to modify parenting time. In the alternative, mother asserts that the district court abused its discretion by improperly construing the best-interest factors in awarding parenting time. Mother further contends that the district court abused its discretion in determining that father's school of choice served the child's best interests. We address mother's arguments in turn.

## I. The district court applied the correct legal standard when addressing the parties' motions to modify the parenting-time schedule.

Mother asserts that the district court should have applied the endangerment standard found in Minnesota Statutes section 518.18(d)(iv) (2022) rather than the best-interest standard. Section 518.18(d)(iv) "governs the modification of custody orders after a judgment and decree." *Crowley v. Meyer*, 897 N.W.2d 288, 293 (Minn. 2017). Under this

5

statute, a district court must "retain the custody arrangement or the parenting plan provision specifying the child's primary residence that was established by the prior order" unless the party moving for modification makes a prima facie case for modification. Minn. Stat. § 518.18(d)(iv); *Christensen v. Healey*, 913 N.W.2d 437, 440 (Minn. 2018). To establish a prima facie case for an endangerment-based modification, a party must allege, among other requirements, that "the children's present environment endangers their physical health, emotional health, or emotional development." *Christensen*, 913 N.W.2d at 440 (quotation omitted). Determining which standard—the best-interest or endangerment standard—applies to a motion to modify parenting time is a question of law, which this court reviews de novo. *See id.*

Here, we conclude that the correct standard for assessing the parties' parenting time is controlled by the stipulated judgment. "Custody provisions contained in a stipulated decree must be accorded a good deal of deference, in that they represent the terms specifically agreed to by the parties and adopted by the court." *Ayers v. Ayers*, 508 N.W.2d 515, 520 (Minn. 1993). And when the parties to a stipulated judgment agree "to the specific terms for the implementation of . . . custody," parties are bound by their agreement. *Id.*; *see also* Minn. Stat. § 518.18(d)(i) (authorizing parties to modify a custody order under the best-interests standard when parties agree and are represented by counsel), (e) (authorizing modification of a prior joint-custody order if "the parties agree in writing to the application of a different standard") (2022).

As are the parties here. Their stipulated judgement provides: "Parenting time shall be determined *under the best interest standard*. Any restriction of Mom's parenting time

6

down to 50% *will not require a showing of endangerment.*" (Emphasis added.) Under this provision, father's proposed schedule did "not require a showing of endangerment" because it leaves mother with greater than 50% of the parenting time. Thus, the plain language of the stipulated judgment mandates that the parties' parenting time must be determined under the best-interest standard.

Still, mother contends that the parties' stipulated judgment should not control because father's motion constitutes a de facto motion to modify the child's primary residence. We disagree. Although the legislature has not defined "primary residence," we have construed "primary residence" to mean "the principal dwelling or place where the child lives." *Suleski v. Rupe*, 855 N.W.2d 330, 335 (Minn. App. 2014). In the stipulated judgement, the district court adjudicated mother's home as the child's primary residence. The subsequent order adopting father's parenting-time schedule does not change that designation. Further, the child will continue to live in mother's home for most nights during the year, and so mother's home remains "the principal dwelling or place where the child lives."[1] *Id.*

---

[1] Mother further asserts that the child's primary residence has been modified because father will have more overnights with the child specifically during the school year. In *Suleski*, we determined that a parenting-time modification did not change the child's primary residence when the father received more parenting time than the mother did during the summer. *Suleski*, 855 N.W.2d at 335. We noted that "[e]ven with the increased parenting time granted to father, mother still ha[d] a majority of the parenting time *during the course of a year.*" *Id.* (emphasis added). *Suleski* is directly on point. While father's proposed schedule grants him more parenting time during the school year, mother retains more parenting time "during the course of a year." *Id.* Accordingly, the district court's order granting father's proposed parenting-time schedule did not modify the child's primary residence.

In sum, the district court properly deferred to the parties' stipulated judgment. Under father's proposed schedule, mother's parenting time is not restricted below 50% and the child's primary residence is not altered. Accordingly, we conclude that the district court did not err by applying the best-interest standard to the parties' parenting-time motions.[2]

## II. The district court acted within its wide discretion when applying the best-interest factors to the parties' motions to modify parenting time.

Mother next contends that the district court abused its discretion in its best-interest analysis regarding the parenting-time modification. Typically, a district court enjoys broad discretion in deciding questions of parenting time. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995). This court will not reverse a parenting-time decision absent an abuse of that discretion. *Hansen v. Todnem*, 908 N.W.2d 592, 596 (Minn. 2018). A district court abuses its discretion when it misapplies the law, makes findings of fact not supported by the evidence, or "deliver[s] a decision that is against logic and the facts on the record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted).

---

[2] Mother also contends that the district court erred by failing to hold an evidentiary hearing on father's motion. The district court must hold an evidentiary hearing if a party establishes a prima facie case for modification pursuant to section 518.18(d)(iv). *Christensen*, 913 N.W.2d at 440. Given our conclusion that section 518.18(d)(iv) does not apply here, the district court did not err by refusing to hold an evidentiary hearing. Further, there is no indication from the record that mother requested an evidentiary hearing, so her argument is forfeited on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it." (quotation omitted)).

Here, mother contends that the district court failed to make findings on all of the best-interest factors enumerated by section 518.17. And she argues that the best-interest findings the court did make are not supported by the record. Neither argument is persuasive.

***Application of the best interest factors***

Section 518.17 instructs district courts to consider "all relevant factors" when determining the best interest of a child pursuant to issues of custody and parenting time. Minn. Stat. § 518.17, subd. 1(a). And the statute enumerates a list of 12 factors relevant to a best interest determination and provides that a district court "must make detailed findings on each of the factors." Minn. Stat. § 518.17, subd. 1(a)(1)-(12), (b)(1). But "what is relevant to a child's best interests for one purpose may differ from what is relevant to a child's best interests for another purpose." *In re Welfare of Child. of M.L.S.*, 964 N.W.2d 441, 453 n.6 (Minn. App. 2021). Accordingly, which best-interest factors a district court must consider will vary depending on the decision before it and the circumstances of the child. *Id.*; *see also Hansen*, 908 N.W.2d at 597 (holding that, upon consideration of a motion to modify parenting time, a district court must only consider the relevant best-interest factors and need not make specific findings on each factor).

We therefore conclude that our inquiry is not whether the district court made findings on *all* of the section 518.17 best-interest factors, but rather whether the district court made "sufficient findings to enable appellate review." *See Hansen*, 908 N.W.2d at 597 n. 2. Here, the district court did just that. It made specific findings regarding how the parties' proffered parenting-time schedules and schools served the best interests of the

9

child. We conclude that these findings are sufficient to enable appellate review. Thus, the district court did not abuse its broad discretion by refusing to make findings pursuant to each section 518.17 best-interest factor. *See Olson*, 534 N.W.2d at 550.

### *Record supporting the district court's best-interest findings*

Next, mother asserts that the district court erred in finding that father's proposed parenting-time schedule served the child's best interests. When reviewing a district court's findings of fact underlying a parenting-time decision, we uphold the findings unless they are clearly erroneous. *Shearer v. Shearer*, 891 N.W.2d 72, 75 (Minn. App. 2017). When applying the clear-error standard of review, appellate courts (1) view the evidence in the light most favorable to the findings, (2) do not reweigh the evidence, (3) do not find their own facts, (4) do not reconcile conflicting evidence, and (5) "need not go into an extended discussion of the evidence to prove or demonstrate the correctness of the findings of the [district] court." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-22 (Minn. 2021) (quotations omitted); *see Ewald v. Nedrebo*, 999 N.W.2d 546, 552 (Minn. App. 2023) (citing *Kenney* in a family-law appeal), *rev. denied* (Minn. Feb. 28, 2024).

Here, the district court found that it is in the child's best interests to follow father's proposed parenting schedule. In support of its finding, the court noted that mother's proposed schedule was "infeasible" for father due to his work schedule. The court further determined that father's schedule "maximizes the meaningful time the child spends with both parents" and limited the number of swaps between the parties, who live an hour apart. And the court found that father's schedule would allow "the child to remain connected to both parties' homes." The district court contrasted father's schedule with mother's, which

"represent[ed] a decrease in the meaningful time [father] would be able to spend with the child." Finally, the district court found that father's schedule resulted in near equal parenting time, therefore permitting "the child to maintain and develop her relationships with her parents, younger sibling, and other maternal and paternal relatives."

The district court's findings are supported by the record. In his pre-hearing declaration, father said that his "career is centered extensively around Fridays and Saturdays," which meant that mother's proposal "seems to be targeting my career and is knowingly unrealistic." Father also stated that mother's immediate family lived in nearby Saint Cloud and that many of the parties' swaps of the child occurred in Saint Cloud. And father included an exhibit with his declaration that showed his proposed schedule created approximately equal parenting time. Nothing in the record that was before the district court refutes father's claims. Regardless, to the extent the district court chose to credit father's declaration over mother's affidavit, this court defers to such a credibility determination. *See Knapp v. Knapp*, 883 N.W.2d 833, 837-38 (Minn. App. 2016) ("We defer to the district court's credibility determinations as to conflicting affidavits."). Because its findings are supported by the record, the district court did not abuse its discretion in ordering that the parties abide by father's proposed parenting-time schedule. *See Hansen*, 908 N.W.2d at 596.

We are not persuaded otherwise by mother's assertion that the district court relied on "inaccurate information." Citing her affidavit filed *after* the district court's order, mother claims that the record contains evidence that (1) mother does not work in the Sartell area, (2) a significant portion of the child's family live in Hutchinson, and (3) "the only

11

person in Sartell is father." Mother asserts that the district court erred by refusing to amend its order or find additional facts and that these facts demonstrate that the district court's best-interest analysis is flawed.

But Mother introduced these facts via an affidavit in support of her motion for amended and additional findings. And when considering a motion for amended findings, a district court is confined to the evidence submitted during the trial. *Zander v. Zander*, 720 N.W.2d 360, 364 (Minn. App. 2006), *rev. denied* (Minn. Nov. 14, 2006). It "may neither go outside the record, nor consider new evidence." *Id.* Accordingly, the district court did not abuse its discretion by denying mother's motion for amended or additional findings, and we will not consider mother's post-hearing filings on appeal to the extent they inject new facts into the record.

In sum, the district court's best-interest findings regarding parenting-time are supported by the record, and mother's argument to the contrary relies on facts that were not properly before the district court. Consequently, the district court did not abuse its discretion in ordering the parties to follow father's proposed parenting-time schedule.

### III. The district court did not abuse its discretion by ordering that the child attend kindergarten in the Sartell school district.

Finally, mother argues that the district court "did not have sufficient evidence to support its findings that Sartell is a better choice for kindergarten" and therefore abused its discretion in ordering that the child attend kindergarten there. Mother's argument is unavailing.

The parties have joint legal custody over the child. "'Joint legal custody' means that both parents have equal rights and responsibilities, including the right to participate in major decisions determining the child's upbringing, including education, health care, and religious training." Minn. Stat. § 518.003, subd. 3(b) (2022). In resolving "specific issues of custodial care," a district court must consider the best interests of the child. *Novak v. Novak*, 446 N.W.2d 422, 424 (Minn. App. 1989), *rev. denied* (Minn. Dec. 1, 1989); *see also* Minn. Stat. § 518.17, subd. 3(a)(3). District courts require "great leeway in making a custody decision that serves a child's best interests, in light of each child's unique family circumstance." *Thornton v. Bosquez*, 933 N.W.2d 781, 790 (Minn. 2019).

We review a district court's factual findings in custody matters for clear error. *Id.* When applying the clear-error standard of review, we view the evidence in the light most favorable to the findings, do not reweigh the evidence, do not find our own facts, and do not reconcile conflicting evidence. *Kenney*, 963 N.W.2d at 221-22.

Here, the district court determined that the Sartell school district suited the child's best interests for largely the same reasons that father's proposed schedule did. Specific to the choice of school, the district court found that both parties maintained a strong connection to the Sartell area through employment and family and could therefore respond to a school in Sartell at a moment's notice, unlike a school in Hutchinson. The district court also acknowledged father's claim that "Sartell School District is a highly ranked school district and will better serve the child's educational needs."

Again, the record before the district court at the time of the parties' motion hearing supports the district court's findings. Father's prehearing filings indicated that mother was

13

employed in the Sartell area and that her immediate family lived there as well. The record also contains evidence that schools in the Sartell school district place higher in academic metrics than schools in the Hutchinson school district.[3] Mother fails to point to any record evidence that disputes the district court's findings. Therefore, the district court's findings are not clearly erroneous.

In conclusion, the district court considered factors relevant to the child's best interests and found that father's choice of school best allowed the child to maintain and foster relationships with her parents and their families. Viewing the record in the light most favorable to the court's findings, we conclude that the findings are not clearly erroneous. *See Kenney*, 963 N.W.2d at 221. Therefore, the district court acted within its discretion.

**Affirmed.**

---

[3] Mother argues that the district court could not properly assess the merits of the parties' proffered schools based on the "limited" nature of the information submitted by father. But mother did not submit any data or information regarding the schools, and therefore she cannot argue that the district court failed to consider such evidence. *See Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003) ("On appeal, a party cannot complain about a district court's failure to rule in her favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question."), *rev. denied* (Minn. Nov. 25, 2003).