# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A25-0258
# A25-0616

In the Marriage of:

Sarah Nicole Smith, petitioner,
Appellant,

vs.

Jonathan George Smith,
Respondent.

**Filed February 2, 2026**
**Affirmed**
**Frisch, Chief Judge**

Hennepin County District Court
File No. 27-FA-21-5542

Kathryn A. Graves, Benjamin J. Hamborg, Dylan Wallace, Henson & Efron, P.A., Minneapolis, Minnesota (for appellant)

Jonathan D. Miller, Julia J. Nierengarten, Caroline K. Ruwe, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota (for respondent)

Considered and decided by Bond, Presiding Judge; Frisch, Chief Judge; and Larson, Judge.

## SYLLABUS

A notice of filing of a "decision or order" under Minnesota Rule of Civil Procedure 59.03 need not be of a final, appealable decision to trigger that rule's timing requirements.

**OPINION**

**FRISCH**, Chief Judge

In these consolidated appeals, appellant-mother challenges the judgment dissolving the parties' marriage and the district court's orders related to appellant's motion for amended findings, the award of conduct-based attorney fees, and the source of payment for those fees. Appellant argues that the district court (1) erred by denying her motion for amended findings as untimely, (2) abused its discretion in awarding conduct-based attorney fees to respondent-father, (3) abused its discretion in determining parenting time, and (4) abused its discretion in allocating the parties' debts. Because the district court did not err in determining that appellant's motion for amended findings was untimely and did not otherwise abuse its discretion, we affirm.

**FACTS**

Appellant-mother Sarah Nicole Smith n/k/a Sarah Nicole Schermer and respondent-father Jonathan George Smith were married in 2011 and have two joint children, only one of whom is relevant to the issues raised in this appeal (child). In October 2021, mother petitioned to dissolve the marriage and obtained an order for protection against father arising from a mental-health incident that he had experienced the prior month.

A custody evaluation was conducted in July 2022, and trial was scheduled for that November. The district court continued the trial date multiple times, and trial eventually commenced in June 2023. At that time, child was experiencing significant mental-health issues and receiving inpatient care, with a plan for her to enter a residential mental-health

2

treatment program in July. Both her and father's mental-health needs were a significant focus of the trial that took place over seven days between June 2023 and February 2024.

On May 1, 2024, the district court filed an order for dissolution judgment. In relevant part, the district court adopted the parties' stipulation on custody, awarding to mother sole legal custody and sole physical custody of the children, subject to father's parenting time. It rejected mother's request to adopt the parenting-time schedule recommended by the custody evaluator, which would have adjusted father's parenting time depending on his compliance with mental-health treatment. Instead, the district court adopted father's request for parenting time of two overnights per week and every other weekend, plus vacation, holiday, and special-occasion parenting time. The district court also divided the parties' property (including providing for the sale of the marital home) and their debts. And it awarded father $1,000 in conduct-based attorney fees based on parenting-time issues occurring in early 2023.

The day the order for judgment was filed, father served and filed a notice of filing of the order. Two events occurred on the following day: judgment was entered on the order for judgment, and mother submitted a letter to the district court asking to correct a typographical error in the order regarding the spelling of her name. The next day, on May 3, the district court filed an amended order for dissolution judgment to correct that spelling error, and judgment was entered on the amended order for judgment on May 16.

On May 31, father filed a motion for amended findings and asked the district court to extend the deadline to hear his motion. The district court granted the motion to extend the hearing deadline and scheduled the hearing for November 1. On October 11, mother

3

filed a motion for amended findings. Father objected to mother's motion as untimely and requested conduct-based attorney fees for having to respond to mother's motion. Following the November hearing, the district court partially granted father's motion, denied mother's motion as untimely, and granted father's request for attorney fees, later setting the fee award at $8,876.

Mother initially filed appeal No. A25-0145. We questioned our jurisdiction over that appeal because neither the district court's original dissolution judgment nor the amended dissolution judgment contained language actually dissolving the parties' marriage. Mother dismissed the appeal and asked the district court to correct that omission. She also asked the district court to treat her motion for amended findings as timely in light of the lack of a final, appealable dissolution judgment at the time she filed her motion. The district court entered a second amended dissolution judgment to correct the omission but declined to reconsider its decision with respect to mother's motion for amended findings.

Mother then filed appeal No. A25-0258, challenging the second amended dissolution judgment, the order on the motions for amended findings and attorney fees, and the order awarding attorney fees. Around the same time, the parties sought relief from the district court related to the sale of the marital home, including how to allocate the proceeds from the sale. As part of its decision regarding the marital home, the district court noted that mother was awarded a property-settlement equalizer of $10,620 to be paid from father's portion of the sale proceeds and deducted from that amount the attorney-fee awards from the dissolution judgment ($1,000) and mother's motion for amended findings ($8,876), awarding mother the net amount of $2,744 from father's portion of the sale

4

proceeds. Mother then filed appeal No. A25-0616 challenging that decision. We consolidated these two appeals.

## ISSUES

I. Was mother's motion for amended findings untimely?

II. Did the district court abuse its discretion by awarding father conduct-based attorney fees?

III. Did the district court abuse its discretion in determining parenting time?

IV. Did the district court abuse its discretion in allocating the parties' debts?

## ANALYSIS

### I. Mother's motion for amended findings was untimely.

Mother argues that the district court erred in rejecting her motion for amended findings as untimely. A motion for amended findings is subject to the same timing requirements as a motion for a new trial. Minn. R. Civ. P. 52.02. Such a motion "shall be served within 30 days after a general verdict or service of notice by a party of the filing of the decision or order." Minn. R. Civ. P. 59.03. We generally review denial of an amended-findings motion for an abuse of discretion. *Zander v. Zander*, 720 N.W.2d 360, 364 (Minn. App. 2006), *rev. denied* (Minn. Nov. 14, 2006). But interpretation of procedural rules is a question of law subject to de novo review. *Rubey v. Vannett*, 714 N.W.2d 417, 421 (Minn. 2006).

The touchstone for interpreting a procedural rule is its plain language. *Id.* If a rule does not define a word or phrase, we look to dictionary definitions to discover its "plain and ordinary meaning." *Jaeger v. Palladium Holdings, LLC*, 884 N.W.2d 601, 605 (Minn.

2016) (quotation omitted).  We consider the rule as a whole and effectuate all of its parts as written.  *In re Welfare of D.J.F.-D.*, 3 N.W.3d 266, 271 (Minn. 2024).  We will not treat any word or phrase as superfluous, *id.*, nor will we add words to the rule, *Halva v. Minn. State Colls. & Univs.*, 953 N.W.2d 496, 504 (Minn. 2021) (addressing statutory interpretation); *see In re M.O.*, 838 N.W.2d 577, 583 (Minn. App. 2013) (stating that rules of statutory interpretation may be applied to interpret procedural rules), *rev. denied* (Minn. Oct. 23, 2013).  We are also mindful of the context of other rules to ensure we interpret rules "according to their purpose."  *Mingen v. Mingen*, 679 N.W.2d 724, 727 (Minn. 2004).  But if a rule's language is unambiguous, "that plain language must be followed."  *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 601 (Minn. 2014) (quotation omitted).

### Interpretation of Minn. R. Civ. P. 59.03

Mother argues that her motion for amended findings was timely because she filed the motion before entry of a final, appealable judgment.  She agrees that rule 59.03 allows for such a motion within 30 days of notice of filing of a "decision or order."  But she argues that, as used in rule 59.03, a "decision" must mean only a final, appealable judgment.  She argues that the rule is unambiguous and reasons that any other definition of "decision" would render the word "order" as superfluous.  She therefore asserts that because there was no final, appealable judgment at the time she filed her motion for amended findings, her motion was timely, and the district court erred in its interpretation of rule 59.03.  This argument requires us to interpret rule 59.03.

We first examine the plain language of the rule.  The word "decision" is not defined in the rule, or elsewhere in the civil rules, but typically means a "judicial or agency

determination after consideration of the facts and the law; esp., a ruling, order, or judgment pronounced by a court when considering or disposing of a case." *Black's Law Dictionary* 511 (12th ed. 2024). The plain language of the rule does not use the words "final," "appealable," or "judgment." The rules separately define the word "judgment" as "the final determination of the rights of the parties in an action or proceeding." Minn. R. Civ. P. 54.01. And the rules reference "judgments" elsewhere. *See, e.g.*, Minn. R. Civ. P. 54.02 (distinguishing between "final judgment" and "any order or other form of decision" that does not resolve all claims), 54.04(b) (establishing timeline for requesting costs and disbursements "after entry of a final judgment"), 55.01 (providing for "judgment by default"); 58.02 (permitting "a stay of entry of judgment upon a verdict or decision"). We are unaware of any authority standing for the proposition that the general word "decision" plainly and exclusively means the specific word "judgment," let alone the more specific term "final, appealable judgment." And we are aware of no authority interpreting rule 59.03 as such. We decline to substitute the word "judgment" for the word used in the rule—"decision." *See Halva*, 953 N.W.2d at 504.

We next consider the rule as a whole, which provides for the opportunity to move for amended findings within 30 days of service of a notice of filing of a "decision or order." Minn. R. Civ. P. 59.03. Mother argues that, because the rule provides for such a motion following notice of filing of a decision *or* order, the use of the disjunctive "or" requires that we distinguish a "decision" from an "order" and that we may only distinguish these two words by defining a "decision" to be a final, appealable judgment. Nothing in the rule provides for such a limited reading of the word "decision," and mother again cites no

7

authority to support this interpretation. She only argues that a broader definition of "decision" renders the inclusion of "order" in the rule as superfluous. We are not persuaded that the rule as a whole requires us to narrowly interpret "decision" as mother suggests because a district court may issue a variety of decisions that are not orders, including many decisions that are not final. In fact, "any order or other form of decision" that does not adjudicate all claims generally is not final. Minn. R. Civ. P. 54.02.

Mother's interpretation ignores the plain language of rule 59.03. The rule provides that the service of a notice of "filing" of a decision or order is the event activating the 30-day time frame. Minn. R. Civ. P. 59.03. This procedure most logically applies to orders or other non-judgment decisions because judgments, for the most part, are *entered*. *See, e.g.*, Minn. R. Civ. P. 58.01 (requiring that judgment be "entered"), 77.04 (distinguishing the "filing of an order or decision" from the "entry of a judgment"). In sum, because rule 59.03 pertains to the notice of filing of any "decision or order," without qualification, the rule readily encompasses a range of non-final decisions, including an order for judgment. *See Bowman v. Pamida, Inc.*, 261 N.W.2d 594, 595, 597 (Minn. 1977) (treating an order for judgment as a "decision or order," notice of which is sufficient to trigger the timeline of rule 59.03).

The rule in the context of other rules confirms our interpretation. Rule 59.03 establishes a deadline for filing a postdecision motion, but the rule imposes no limit on how *soon* a party may file such a motion. *See* Minn. R. Civ. P. 59.03; *see also Rieman v. Joubert*, 376 N.W.2d 681, 684 (Minn. 1985) (stating that the purpose of rule 59.03 is to "start the time" for postdecision motions). While a party usually must wait to file an appeal

8

until judgment is entered on an order for judgment under the rules of civil *appellate* procedure, *Swenson v. City of Fifty Lakes*, 439 N.W.2d 758, 759 (Minn. App. 1989); Minn. R. Civ. App. P. 103.03, there is no such constraint regarding the filing of a postdecision motion under the rules of *civil* procedure. To the contrary, the rules of both civil procedure and civil appellate procedure plainly contemplate that a party may file, and a district court may decide, a postdecision motion before judgment is entered. *See* Minn. R. Civ. P. 52.02 (stating that a district court "may amend its findings or make additional findings, and may amend the judgment accordingly if judgment has been entered"); *accord* Minn. R. Civ. P. 58.02 (permitting a district court to stay entry of judgment up to time required to hear and determine a postdecision motion); Minn. R. Civ. App. P. 104.01, subd. 3 (providing that a notice of appeal filed before disposition of a proper and timely postdecision motion is premature and does not divest district court of jurisdiction to dispose of the motion). This framework is also consistent with the purpose of a motion for amended findings, which is to afford the district court an opportunity to conduct a "review of its own exercise of discretion." *Johnson v. Johnson*, 563 N.W.2d 77, 78 (Minn. App. 1997) (quotation omitted), *rev. denied* (Minn. June 30, 1997).

Mother advances several arguments to persuade us otherwise. She first asserts that when the district court files an order for judgment, only a notice of entry of judgment—not a notice of filing of the order—can activate the timeline for rule 59.03. In support of this proposition, she cites case-specific orders that are inapposite, nonbinding, and not persuasive. The cited orders do not relate to the timeliness of a postdecision motion presented to the district court under rule 59.03 but instead to the timeliness of an appeal

9

under Minn. R. Civ. App. P. 104.01, subds. 1-2. And because Minn. R. Civ. App. P. 104.01, subd. 2, allows a district court to address postdecision motions "before an appeal is commenced," that rule serves a different purpose than rule 59.03. *See Mingen*, 679 N.W.2d at 726.

Mother also argues that because a decision that is not final may be revised by the district court at any time, a party may bring a motion for amended findings or a new trial at any time until the district court issues a final decision. She is correct that a decision is "subject to revision at any time" until entry of a final judgment adjudicating all claims, rights, and liabilities. Minn. R. Civ. P. 54.02. But she cites no authority in support of her expansive interpretation that, because and so long as a district court *may* revise its decision, it *must* continue to entertain motions by the parties to amend the decision. She also does not explain how this reasoning aligns with the plain language of rule 59.03, which says nothing about finality. As such, we are not persuaded to read a finality requirement into rule 59.03.[1]

Mother expresses concern that interpreting rule 59.03 as not requiring a final, appealable decision leaves open the possibility of a party serving multiple notices following both the filing of an order for judgment and a later entry of judgment, with competing claims for which notice controls the timeliness of a postdecision motion. Even

---

[1] This opinion is limited to the specific procedural circumstances presented here—the timeliness of a motion brought under a rule of civil procedure subject to rule 59.03's timeline. *See In re Rollins*, 738 N.W.2d 798, 802 (Minn. App. 2007) ("Opinions must be read in light of the issue presented for decision. And assumptions underlying an opinion that are not the subject of a court's analysis are not precedential on the point that is assumed." (citation omitted)).

if true, this is not a reason for us to disregard the existing plain language of the rule. *See Walsh*, 851 N.W.2d at 601 ("Where the language is plain and unambiguous, that plain language must be followed." (quotation omitted)). And even if confronted with competing claims regarding the timeliness of a postdecision motion, a district court retains the authority to "scrutinize[]" the notices to determine which "begins [the] countdown on valuable rights." *Swanson v. Swanson*, 352 N.W.2d 508, 510 (Minn. App. 1984).

We therefore conclude that the language of Minnesota Rule of Civil Procedure 59.03 is unambiguous and hold that a notice of filing of a "decision or order" under Minnesota Rule of Civil Procedure 59.03 need not be of a final, appealable decision to trigger that rule's timing requirements.

### Timeliness of Mother's Motion

Against this backdrop, we turn to the timeliness of mother's motion for amended findings. On May 1, 2024, father served a notice of filing of the order for judgment filed that day. A notice limiting the time for posttrial motions must be a writing that clearly and plainly calls to the attention of the recipient what it is that has been filed and when. *Levine v. Hauser*, 431 N.W.2d 269, 270 (Minn. App. 1988).

Father's notice of filing identified and provided a copy of the first order for judgment. The notice provided that it was being given for purposes of limiting the time for "post-order relief." Such notice is sufficient to initiate the timing mechanism set forth in rule 59.03 to move to amend the findings in that order. The fact that the district court corrected a clerical mistake in the amended order for judgment did not affect the timing requirements set forth in rule 59.03 because the amended order was identical in substance

11

to the original order, making mother's motion a challenge to the findings in both orders. Father's May 1, 2024 notice called to mother's attention that the order containing the operative findings was filed that day. *See id.* (requiring notice to call to recipient's attention what was filed and when). As such, the 30-day timeline for postdecision motions pertaining to the findings in both the original and the amended order for judgment began to run on May 1, 2024. Because mother brought her motion for amended findings in October, more than five months later, the district court did not err in concluding that mother's motion was untimely under rule 59.03.

## II. The district court did not abuse its discretion by awarding father conduct-based attorney fees.

A district court may award conduct-based fees "against a party who unreasonably contributes to the length or expense of the proceeding." Minn. Stat. § 518.14, subd. 1a (2024).[2] "A motion for conduct-based attorney fees may be based on the opposing party's pursuit of frivolous or bad-faith claims." *Baertsch v. Baertsch*, 886 N.W.2d 235, 239 (Minn. App. 2016). We review a district court's decision regarding conduct-based attorney fees for an abuse of discretion. *See Madden v. Madden*, 923 N.W.2d 688, 702-03 (Minn. App. 2019) (applying abuse-of-discretion standard to an award of conduct-

---

[2] This statute was amended during the pendency of this action, effective for proceedings "commenced on or after" August 1, 2024. 2024 Minn. Laws ch. 101, art 1, § 5, at 862, 868. We cite the current version of the statute because it does not appear that the recent amendments affect the parties' rights or arguments. *See Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn. 2000) (noting that, generally, appellate courts apply the version of a statute in effect when we decide an appeal, but an exception applies "when rights affected by the amended law were vested before the change in the law").

12

based fees).  A district court abuses its discretion if its factual findings are unsupported by the evidence, it improperly applies the law, or it resolves the question in a manner contrary to logic and fact.  *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022).

Mother argues that the district court abused its discretion by awarding conduct-based attorney fees in the dissolution judgment and in its order denying her motion for amended findings.  She also contends the district court erred as a matter of law by filing an order regarding the payment of those fees after she filed the first of these consolidated appeals.  We address each argument in turn.

### Dissolution Judgment

The district court awarded father $1,000 in conduct-based fees for mother's failure to pay fees for father's supervised parenting time in February to April 2023.  The district court explained that the parties had agreed to father's supervised parenting time during that time frame and "agreed to equally share the [supervision] fee—which mother then failed to pay," resulting in father incurring attorney fees "to secure parenting time."

Mother principally contends that this award is an abuse of discretion because the parties' agreement is confidential information from mediation.  The record indicates otherwise.  In a March 2023 order, the district court noted that the parties filed correspondence with the district court indicating that they had agreed to continue supervised parenting time for 60 days.  The district court discredited mother's claim that the parties had not reached an agreement as to payment of the supervision fee because they "could not have come to this [parenting-time] agreement without agreeing also to how it would be funded."  And at trial, when mother objected to father's testimony about the

13

payment agreement, alleging that such information originated from a confidential mediation, the district court explained that it was already aware of the agreement because "the alleged 60-day agreement" had previously been disclosed to the district court. In short, the district court's determination that the parties had agreed to share the fee was not confidential but based on information that had been voluntarily communicated to the district court about continuing supervised parenting time.

Mother also contends that the district court failed to consider "the entire context of the situation," pointing to her "objection to changing parenting time" and the disproportionate number of witnesses father called at trial. She does not support this argument with citation to the record or legal authority, thereby forfeiting it because we discern no prejudice based on our review of the record. *Schoepke v. Alexander Smith & Sons Carpet Co.*, 187 N.W.2d 133, 135 (Minn. 1971) (explaining that an assignment of error "not supported by any argument or authorities" is forfeited "unless prejudicial error is obvious on mere inspection"); *see also Braith v. Fischer*, 632 N.W.2d 716, 725 (Minn. App. 2001) (applying *Schoepke* in a family-law appeal), *rev. denied* (Minn. Oct. 24, 2001). Even so, mother does not dispute that she refused to pay an agreed-upon parenting-time fee, that her behavior led to disruptions in father's parenting time, or that father incurred attorney fees to address that issue. In short, mother presents no basis for concluding that the district court abused its discretion in determining that she unreasonably contributed to the length and expense of the proceeding.

***Motion for Amended Findings***

Mother argues that the district court abused its discretion by awarding fees based on its conclusion that her postdecision motion was untimely. We do not agree that the district court awarded attorney fees simply because mother's postdecision motion was untimely. The district court set forth several reasons for the award, including that mother's motion was "lengthy" and asked the district court to "rewrite approximately a third of its 70-page" decision. Given the context of this case, we understand the district court to have ruled not merely that mother's motion was "lengthy," but rather that her motion was *unnecessarily* lengthy. The district court also noted that the motion came as a "surprise[]" after "five months of inactivity" and that the delay in bringing the motion posed a barrier to conducting a status conference or otherwise facilitating a procedure to "keep costs down." These findings reflect a determination that mother's motion was excessive and that her delay in filing the motion was both extreme and unjustified, leaving father no viable alternative other than to prepare a complete substantive response and incur associated attorney fees. These findings are reasonably grounded in the record, mother does not allege that the district court misapplied the law, and—given these findings—the district court's resolution of the attorney-fee question is contrary to neither logic nor facts in this record. We discern no abuse of discretion in the district court's determination that father is entitled to recover those attorney fees based on mother's conduct. *See Woolsey*, 975 N.W.2d at 506.

Mother also asserts that the district court should have reduced father's attorney-fee request of $9,877 by more than $1,000. In support of this assertion, she relies only on the

attorney affidavit that she submitted to the district court, without accounting for the fact that the objections indicated therein largely relate to redacted entries or that aspects of the work were not necessary to respond to her motion—issues the district court addressed in its order. It is mother's burden to affirmatively demonstrate the error she claims. *McBee v. Team Indus., Inc.*, 26 N.W.3d 847, 857 (Minn. 2025); *see Loth v. Loth*, 35 N.W.2d 542, 546 (Minn. 1949) (stating that appellate courts cannot assume district court error). Given the cursory nature of her argument, she has not met her burden to show an abuse of discretion by the district court in its fee award.

### *Order on Payment of Fees*

Mother argues that the district court committed legal error in its February 2025 order addressing the sale of the marital home because the order directed the conduct-based fees awarded against mother to be paid out of the equalizer she was due from father's share of the sale proceeds. She contends that the district court lacked jurisdiction to make this order because the first of these two consolidated appeals, which challenges the attorney-fee awards and the property settlement, was pending at the time. This argument is unavailing. While "the filing of a timely and proper appeal suspends the [district] court's authority to make any order that affects the order or judgment appealed from," a district court "retains jurisdiction" as to collateral matters. Minn. R. Civ. App. P. 108.01, subd. 2. And the appeal "does not stay enforcement" of the district court's judgment or order. *Id.*, subd. 1. Father was already obligated to pay mother the equalizer from the sale proceeds, mother was already obligated to pay father conduct-based attorney fees, and neither of those obligations was stayed pending appeal. The district court's February 2025 order did not

16

affect the substantive decisions imposing either of those obligations; it merely reiterated those obligations and required the parties to be efficient about addressing them. We therefore conclude that the district court did not commit legal error in its February 2025 order addressing the sale of the marital home.

### III. The district court did not abuse its discretion in determining parenting time.

In a dissolution proceeding, the district court "shall . . . grant such parenting time on behalf of the child and a parent as will enable the child and the parent to maintain a child to parent relationship that will be in the best interests of the child." Minn. Stat. § 518.175, subd. 1(a) (2024). When assessing the children's best interests, a district court must consider and make detailed findings on "all relevant factors," including 12 statutorily enumerated factors. Minn. Stat. § 518.17, subd. 1(a), (b)(1) (2024). A district court must also consider that it is in the children's best interests to promote "safe, stable, nurturing relationships" with both parents, and that both parents have the capacity to develop and sustain such relationships with the children "unless there are substantial reasons to believe otherwise." *Id.*, subd. 1(b)(2), (3) (2024).

"District courts have broad discretion on matters of custody and parenting time." *Hansen v. Todnem*, 908 N.W.2d 592, 596 (Minn. 2018). We will reverse a parenting-time decision for an abuse of discretion only if the district court made clearly erroneous factual findings or improperly applied the law. *See id.* at 596, 599. When reviewing a district court's factual findings, we defer to its credibility determinations. *Hagen v. Schirmers*, 783 N.W.2d 212, 215 (Minn. App. 2010). A finding is clearly erroneous if it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a

17

whole." *Kiya v. Jackson*, 23 N.W.3d 857, 863 (Minn. App. 2025) (quoting *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021)), *rev. denied* (Minn. Aug. 12, 2025).

Mother argues that the district court abused its discretion by granting father the parenting time he requested. She acknowledges that the district court made findings on all 12 statutory best-interests factors but argues that its decision is faulty because the district court adopted father's proposed findings "nearly verbatim." We "disfavor the verbatim adoption of a party's proposed ruling by the district court." *Suleski v. Rupe*, 855 N.W.2d 330, 339 (Minn. App. 2014).

We have reviewed the district court's order and disagree with mother's characterization of that order as a verbatim adoption of father's proposed order. While the order contains several sentences in the parenting-time analysis that track father's proposed findings, the overwhelming majority of the district court's order does not. For example, the findings are similar in content but distinct in language from father's proposed findings on the following factors: the children's physical, emotional, cultural, spiritual, and other needs; the children's preferences; and the effect of domestic abuse on the safety and welfare of the children. At the same time, the district court declined to adopt large sections of father's proposed findings, including those regarding child's special needs and the effect of various changes on the children's well-being and development.

Additionally, even when a district court adopts proposed findings verbatim, it is "not reversible error per se" but "raises the question of whether the court independently evaluated the evidence." *Schallinger v. Schallinger*, 699 N.W.2d 15, 23 (Minn. App.

18

2005), *rev. denied* (Minn. Sept. 28, 2005).  Our review of the district court's order confirms that it conducted an objective analysis of the evidence and made numerous independent findings, including findings as to the very topics that mother charges it with having "glossed over"—father's mental health, treatment progress, successful parenting time with both children, and plans to live with his mother, including repeated determinations that his testimony on these points was credible; child's special needs, treatment progress, and relationship with father; and the custody evaluator and the district court's decision not to adopt the evaluator's parenting-time recommendation from more than a year before trial. That these findings differ from mother's view of the evidence does not render them erroneous.  *See Kenney*, 963 N.W.2d at 223 ("When the record reasonably supports the findings at issue on appeal, it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary." (quotation omitted)).

Mother also contends that the district court abused its discretion by awarding father weekday parenting time when he no longer lives in the children's school district and by awarding parenting time on Christian holidays to father, rather than to her, "solely because she is Jewish," even though she has always celebrated those holidays with the children. We are not persuaded.  Mother does not identify, and our review of the record has not revealed, the location of father's residence.  And we discern no abuse of discretion in dividing religious holidays between parents according to their distinct faith backgrounds, even if it necessitates a change from the family's habits prior to the dissolution.

In sum, mother has not demonstrated that the district court adopted father's proposed findings verbatim or abused its discretion in deciding to award father the parenting time he requested.

**IV.    The district court did not abuse its discretion in allocating the parties' debts.**

When dissolving a marriage, a district court must make a "just and equitable division" of the parties' "marital property."   Minn. Stat. § 518.58, subd. 1 (2024). Likewise, "[d]ebts are apportionable as part of the property settlement." *Bone v. Bone*, 438 N.W.2d 448, 452 (Minn. App. 1989).  Allocation of the parties' marital debts is left to the district court's "broad discretion," and we will not reverse absent an abuse of that discretion. *Freking v. Freking*, 479 N.W.2d 736, 740 (Minn. App. 1992).

Mother claims error in four aspects of the district court's allocation of the parties' debts: (1) tax liability; (2) parental fees for child's medical assistance; (3) father's student loans; and (4) a loan from father's friend.  We address each in turn.

*Tax Liability*

Mother contends that the district court abused its discretion by allocating to her a $1,754 marital debt, reflecting the balance due on the parties' 2017 federal tax debt.  She contends this allocation effectively and improperly assigns the entire 2017 tax debt of $5,204.91 to her by failing to account for the fact that the initial payment on that debt came from her 2022 tax refund.  We are not persuaded.  Parallel to this allocation, the district court assigned to father a 2021 state tax debt of a similar amount ($1,922).  It also noted that the IRS intercepted mother's 2022 tax refund.  The district court also implicitly determined that mother bears the greater responsibility for the 2017 tax debt, citing father's

20

testimony that he was surprised to learn of it in March 2023 and had not agreed with mother regarding how to address it because "he did not agree with how [she] over claimed allowances, causing a greater tax liability for her income." On this record, we discern no abuse of discretion in the district court's allocation of the parties' tax liability.

**Medical-Assistance Parental Fees**

Mother also argues that the district court abused its discretion by determining that the parties should "split evenly" the remaining debt for child's medical-assistance parental fee. She contends this allocation fails to give her credit for paying $1,180.66 of the fee and that the reason it offered—that it lacked "information on what was paid, or the remaining debt"—fails to account for evidence she offered. This argument is similarly unavailing. Mother emphasizes an exhibit with documentation reflecting fees incurred in mid-2022 and the referenced $1,180.66 payment in August 2023. But the parties testified that child received additional treatment after the time frame addressed in those documents and that they expected additional parental fees for her residential treatment, which began in July 2023 (the month after trial started) and ran through February 2024 (ending just after the last day of trial). They also agreed that they should share the parental fees, with mother requesting that the fees be divided "equitably" and father requesting "joint" responsibility. The district court adopted this request in light of the incomplete information available by simply ordering the parties to share the burden of parental fees "evenly." Under the circumstances, this approach was not an abuse of discretion.

***Father's Student Loans***

Mother also challenges the district court's determination that father's $43,913 student-loan debt is marital. Whether debt is marital or nonmarital is a question of law subject to de novo review, but we defer to the district court's factual findings unless they are clearly erroneous. *See Freking*, 479 N.W.2d at 739-40. Father testified that he incurred student loans to obtain his master's degree, started his master's program in 2015 and graduated in 2017, sought the degree to increase his earnings to support his family, and received a pay increase of approximately $18,000 the first year after obtaining his degree. Mother now seeks to counter this testimony by suggesting that it was not credible because it was "not supported by any documentary evidence" and was in fact refuted by father's paystubs in the record. But the district court accepted father's testimony, even without documentary evidence, and we defer to that implicit credibility determination. *Hagen*, 783 N.W.2d at 215. And the paystubs that mother points to are for 2020 to 2022—several years after father obtained his degree. Because father incurred the student-loan debt and began benefiting from it during the marriage, the district court did not err in determining that the debt is marital.

***Loan from Father's Friend***

Mother also challenges the district court's determination that a $1,000 loan father received from a friend is marital debt. Father testified that, in the first week of October 2021, a friend "gave" him $1,000 in cash as a personal loan for the purpose of covering expenses while father was in treatment; he had not paid the friend back by the time of trial. Mother suggests that father's testimony that the friend "gave" him the money reflects a

gift, not a loan, but father only ever described the funds as a loan. She also suggests that the district court should have deemed the loan nonmarital because father said during cross-examination that the funds were "not a marital debt." But on redirect-examination, he reaffirmed his original testimony about the timing and purpose of the loan, and that he was requesting it be allocated as marital debt. Finally, mother challenges father's testimony on the ground that he provided no corroborating documentation, but it was the district court's prerogative to determine whether that affected his credibility; we defer to its implicit determination that it did not. *Hagen*, 783 N.W.2d at 215. As such, mother has not shown any error by the district court in treating the loan from father's friend as marital debt.

## DECISION

We hold that a notice of filing of a "decision or order" under Minnesota Rule of Civil Procedure 59.03 need not be of a final, appealable decision to trigger that rule's timing requirements. Mother's motion for amended findings was untimely because father triggered the 30-day timeline for a motion for amended findings by serving a notice of the filing of the district court's order for dissolution judgment, and mother did not serve her motion for amended findings until well over 30 days after service of the notice. The district court did not abuse its discretion by awarding conduct-based attorney fees to father based on mother's refusal to pay an agreed-upon parenting-time supervision fee and her excessive and unjustifiably delayed motion for amended findings, and it did not err in ordering payment of those fees from the proceeds of the sale of the marital home. Nor did it abuse its discretion in determining parenting time or in allocating the parties' marital debts.

23

**Affirmed.**